BILL ALFORD v. THE STATE.

*No. 356. Decided November 26.*

1. **Alteration of Brand — Indictment — Allegation and Proof of Ownership.**—An indictment for altering the brand on cattle is sufficient, under article 760 of the Penal Code, if it alleges that the stolen animal was taken from the possession of the party having the actual care, control, and management of the animal at the time of taking. In this respect there is no difference between the law of theft and altering brands.

2. **Ownership — Change of, by Act of Animals — Variance.**—On a trial for illegally altering the brand on animals, where the evidence showed that the offense was committed after the animals had strayed from the ranch of the alleged owner, into the adjoining pasture of another party than the alleged owner, and it was insisted by the defense that the party having actual care, control, and possession of the premises where the offense was committed was the party properly in possession of the animals, and that the facts proved constituted a variance between the allegations and proof of ownership, *held*, that the objection was not tenable. Cattle can not by their act or volition change ownership in themselves from one person to another.

3. **Accomplice.**—Mere knowledge that an offense is being committed, and the mere concealment of such knowledge, does not constitute a party an accomplice who does not participate in the commission of the crime.

APPEAL from the District Court of Val Verde. Tried below before Hon. T. A. FULLER, Special Judge, who, by agreement of parties, was selected to try the case.

Appellant was indicted for illegally altering the brand on twenty head of cattle, alleged to be the property of one W. F. Aaron, and upon his trial was found guilty, and his punishment assessed at two years' confinement in the penitentiary.

All the material facts in the transaction are stated in the testimony of one Mrs. Davis; and inasmuch as the defendant contended, on the trial, that her testimony showed her to be an accomplice to the crime, we reproduce her testimony in full, as shown by the statement of facts, as follows:

Mrs. Davis, being sworn for the State, testified: I know defendant; have known him since 1888. During the month of December, 1888, I lived on Mr. Dewees' ranch, which is seven miles west of Comstock. I saw the defendant, at the ranch in the month of December, 1888, alter the brands upon about twenty head of cattle, as follows: From $\overline{X}$ to $\circ\widehat{X}\circ$. That defendant did this in connection with Oscar George and a Mexican, whom she does not know, and that this was done at Mr. Dewees' said ranch, within the pens of said Dewees, which at the time was in the exclusive control, care, and management of Mr. George. I do not know if the whole ranch was in a pasture; we went through gates to get there; had lived on the ranch about two months.

Cross-examined: I was sick and had gone to the ranch for my health; Mr. George and his wife lived on the ranch; my husband, Mr. Kelley, was working for Mr. Dewees; so was the defendant and a Mexican. Of course, I do not like the defendant; I did tell Mr. Jones that I wanted to get the defendant in the penitentiary, but that was not in this case, but when he was tried for killing my husband; but my trouble is all over now, and I do not care what becomes of him. I first told my mother, in the presence of my present husband, about the defendant altering the brands upon cattle, and he told Mr. Roach; this was about two years after it had occurred, and after defendant had killed my former husband, Kelley. Mr. Roach then came and talked to me about it, and I told him I had never told it before, because I considered it none of my business. The cattle had been put in the pen, and they were branding them before I got up. My husband and the other men had their breakfast before I got up that morning; after I got up my husband came to the house, and we walked out to the pen and crawled up on the fence and watched them branding. I stayed there with my husband about an hour, and then went back to the house and got dinner for them. I saw them branding (the defendant helping), and asked my husband what they were doing that for, and he told me that they were altering the brands. The pen was made of rails laid upon each other. While I remained at the pen my husband and I sat upon the fence, while Mr. George, the defendant, and a Mexican would rope a cow and throw her down, then one would get on her and hold her, while one of the others would get the branding irons and brand the animal; they all did the branding, and the defendant did the most of it. My husband did not brand any that I saw, but he might have branded some; he was working with them. The defendant, a Mexican, and my husband were in the employ of Mr. Dewees, and George was in control; this occurred in the month of December, before Christmas, 1888. Mrs. George was not at the ranch that day; she had come to Del Rio, and returned that night. I think there were about twenty head of cows and calves in the pen; can not say how many calves or cows; the calves were all sizes and ages; I do not know of any steers in there. Mrs. George only left the ranch twice while I remained there, that I remember of; once when she and I went to visit her mother at Langtry, and the time that she came to Del Rio. I never had seen any cattle branded before this time, and wanted to see how it was done. I do not know all the brands that were upon these cattle, nor who they belonged to. They got through branding about sundown, and then drove toward the river; my husband and I got on a horse each, and rode in sight, and behind them, until they went down to the river; we then came back to the ranch, and had a cold snack, because I had not cooked any supper. I rode a red horse with a man's saddle; do not know what colored horse my husband rode, nor any one of the others. I do not know how the defendant was dressed that

day; the horse that I rode had been brought there and was staked about the house, and was supposed to be Mr. Dewees' horse and saddle. The branded cattle were driven to the Rio Grande, and I saw from the porch of the ranch on the next day a herd of cattle on the hill, on the Mexican side of the river, and my husband told me those were the same cattle which had been driven to the river from this side; the point where they were driven across the river is about seven miles from the ranch.

*Joseph Jones*, for appellant, contended: 1. That there was a fatal variance between the allegation and proof as to ownership. His contention upon this proposition was, that inasmuch as defendant was charged with altering brands, the rule as it obtained in cases of theft, as to what constituted possession, viz., " possession, care, control, and management of the property," did not apply, because in theft such possession was synonymous with title and ownership; whilst, on the other hand, mere possession, charge, and control of cattle does not make such person owner of the brands upon such cattle, because the brands, in order to be evidence of ownership, must be recorded, and when so recorded are the best notice of ownership thereof; and the rule that the person in " possession, charge, and control" would be more likely to be viewed as the actual owner than the real owner, is lost, as well as the reason therefor. Penal Code, arts. 729, 760; Frazier v. The State, 18 Texas Ct. App., 441; Code Crim. Proc., art. 426; Rev. Stats., arts. 4556, 4560, 4561.

To illustrate: Suppose that Aaron was in possession, charge, and control of the Roach cattle, and, in contemplation of article 426, Code of Criminal Procedure, the owner thereof, and at the same time was the actual owner of a brand and cattle of his own, and that he should consent that some one should alter the brand upon the Roach cattle to resemble that of his own. The party thus altering the brand would not be liable under article 760, Penal Code, because if article 426, Code of Criminal Procedure, applies in this case, it invests him with power to consent: This could hardly have been intended by the Legislature.

Again, we say that this method of prosecution deprives the defendant of his constitutional right to demand the nature and cause of the accusation against him, inasmuch as the person in control may represent various persons in the same capacity, for the same purpose, and at the same time. The indictment does not allege possession, but simply ownership; the proof does not show possession, but simply care, control, and management. Has the defendant been apprised of what he was called upon to answer? Could he plead a judgment in such a case in bar of any other prosecution for the same offense?

2. An animal while trespassing upon the enclosure of another is not upon its accustomed range in contemplation of law, and the presumption of law that such animal is in possession of its owner can not be indulged

with reference to it, and more especially where the alleged ownership depends upon possession for its very existence.

The evidence shows that if defendant ever altered the brands upon any cattle, that they were within the enclosure of Dewees, which was under the exclusive control of Oscar George, and that Aaron, the alleged owner, had no control thereof. Defendant asked special instruction upon this phase of the case, which was refused by the court.

3. With regard to Mrs. Davis' testimony, we think she was clearly an accomplice; and if so, it was of vital importance that the law upon this issue should have been clearly and correctly explained to the jury; and the verdict can only be attributable to the failure to charge upon this issue. We submit the proposition upon the authority of Phillips v. The State, 17 Texas Ct. App., 174.

In his brief and argument on motion for a rehearing (which was overruled), counsel contended that the court should have reversed the judgment, because the court below erred in permitting the witness Roach to testify, as shown by his bill of exceptions No. 4, as follows: "That in May, 1889, he received information that some of his cattle were in Mexico,. and that he went there and found, in a herd that the Mexicans had, two or three cows that he recognized as his, that had originally been branded $\overline{X}$, and upon which the brand had been changed so that it appeared thus $\overline{\circ X \circ}$; that he saw these cattle, at a point about twenty miles below the Dewees pasture, on the opposite side of the river in Mexico; that said cows were thus branded, the brands on some having peeled off, and none had haired over, and to his judgment had been put on not more than three or four months; that there was one cow in particular which he recognized as one which he had bought in Louisiana, and which had been on the Texas side of the Rio Grande."

This testimony was objected to at the trial, because there was no evidence to show defendant's connection with these cattle, or that they were some of the cattle which the witness Mrs. Davis had testified about; nor was there anything to show that the brands of these cattle had been altered at the same time and place as were the brands of the cattle for which he was being prosecuted. "The admission of illegal evidence upon an important fact, material and pertinent to the issue, and which is additional to other facts legally in evidence, is erroneous; and a conviction will not be permitted to stand, however certain it may be that the jury would have found a verdict of guilty upon other sufficient evidence adduced upon the trial." McWilliams v. The State, 44 Texas, 116; Haynie v. The State, 2 Texas Ct. App., 174; Bigby v. The State, 5 Texas Ct. App., 102; Cox et al. v. The State, 8 Texas Ct. App., 304; Fulcher v. The State, 28 Texas Ct. App., 473.

"The defendant must be connected in some way with extraneous facts and circumstances which are admitted in evidence against him, and un-

less so connected their admission should constitute reversible error.''
Nixon v. The State, ante, p. 205.    But if such evidence was admissible
under any of the established rules, it then became the duty of the judge
to instruct the jury as to the purpose of the same, which was not done.
Kelley v. The State, 18 Texas Ct. App., 269.

No brief for the State on file in the record.

DAVIDSON, Judge.—Appellant was convicted of altering the brand
upon cattle not his own, without the owner's consent, and with intent to
defraud.    The indictment alleged ownership in W. F. Aaron, and the
testimony disclosed the fact to be that he was the agent of one Roach, and
had the actual care and management of the cattle at the time the brand
was altered upon them.

Upon the trial the defendant objected to evidence showing Aaron's
alleged ownership, because, under article 760 of the Penal Code, the owner-
ship could only be averred in Roach, the actual owner.    In other words,
it is contended that ownership, under said article, is not constituted as in
cases of theft, by actual care, and control, and management of the prop-
erty.    We are of opinion that such possession is sufficient to constitute
ownership under the cited article, and that in this respect there is no dif-
ference between the law of theft and altering brands.

Under statutes in this State prohibiting and punishing fraudulent ac-
quisition of property without the consent of the owner, ownership is con-
stituted by the actual care, control, and management of the property, and
it is sufficient if the indictment allege ownership in such person, whether
it be for theft or altering brands with intent to defraud; such fact being
alleged, and such possession shown, ownership is proven.    Alteration of
a brand with intent to defraud is but a species of theft, and by statute is
punished as theft.    The State, in order to sustain its case, must prove the
allegation; otherwise there will be a variance, and the accused should be
acquitted.

The cattle were branded in December, 1888, just prior to Christmas,
and on the following day driven by defendant and others across the Rio
Grande into the Republic of Mexico.    In May, 1889, Roach, the actual
owner, recovered four head of his cattle in Mexico, one of which he
recognized as having formerly been on his ranch in Texas.    The brand
on all of the cattle had been altered in the same manner as those branded
by the defendant the previous December, and when recovered had been
changed about three or four months, as well as the witness could tell from
the appearance of the brand.    This evidence was objected to on several
grounds, none of which were well taken.    The testimony was admissible.

At the time the brand was altered the cattle were in the enclosure of

Dewees, which was under the control and management of one Oscar George.   This ranch adjoined the ranch of Roach, which was controlled and managed by Aaron.   Defendant contends that the cattle had strayed into the enclosure of Dewees, and that that fact changed ownership from Aaron into George, and constituted George the owner, in that the latter was thereby placed in possession and actual care, management, and control of the cattle, to the exclusion of Aaron.   We do not so understand the law, nor can we agree that it is a sound proposition that cattle can by their act or volition change ownership in themselves from one person to another.   Our law does not contemplate such a change of ownership in property.

The court did not err in failing to charge the law in relation to accomplice testimony.   Mrs. Davis was not shown by the testimony to be an accomplice.   Neither the knowledge on her part that an offense was being committed, nor the mere concealment of such knowledge, constituted her an accomplice.

If the testimony of Mrs. Davis is to be credited, and the jury seem to have given it credence, the defendant was properly convicted.

The judgment is affirmed.

*Affirmed.*

Judges all present and concurring.