## LIGE BRITTAIN v. THE STATE.

### No. 1430.    Decided November 11th, 1896.

**1. Defendant as Witness—Impeachment by Showing Misdemeanors.**

The credibility of a defendant as a witness, cannot be impeached by showing on his cross-examination, that he has been guilty or stands charged with misdemeanors; which do not impute moral turpitude.

**2. Same—Cases Imputing Moral Turpitude.**

The courts will permit an investigation as to other cases imputing moral turpitude of a defendant witness, only for the purpose of affecting the credit of such witness. They cannot be permitted for the purpose of laying a predicate to impeach by showing contradictory statements; and where the State is permitted to ask a defendant, on cross-examination, if he is under indictment for other crimes or misdemeanors his answer is conclusive; and, if he answers that he does not know, it is error to permit the introduction in evidence of the indictments charging him with such other crimes.

**3 Witness Who is Excluded Because Not Under "The Rule."**

On a trial for murder, where a witness has been excluded from testifying because he had not been placed under the rule. Held· It was not error for the District Attorney, in answer to an inquiry from the court, to state, that he expected to prove by said witness that one of defendant's witnesses was not at the scene of the homicide as he had stated

**4. Murder—Charge—Not Necessary to Define Manslaughter and Justifiable Homicide When.**

On a trial for murder, where there is no evidence calling for instructions upon manslaughter nor justifiable homicide, it is not necessary, in a charge on murder in the second degree, to define manslaughter and justifiable homicide.

**5. Same—Charge—Negligent and Excusable Homicide.**

See, opinion for facts stated on a trial for murder, upon which, the charge of the court (copied in the opinion) upon negligent homicide of the second degree is—Held: By a majority of the court, to be sufficient; but, Held, by HENDERSON, Judge, insuf-

ficient, because predicated alone upon the theory of an accidental killing while displaying a pistol near a private house |Penal Code, Art. 334], when it should also have presented the theory of an accidental killing by one unlawfully carrying a pistol |Penal Code, Art. 338]. A majority of the court also hold, that the testimony did not raise the issue of excusable homicide.

APPEAL from the District Court of Shelby. Tried below before Hon. TOM C. DAVIS.

Appeal from a conviction for murder in the second degree; penalty, five years' imprisonment in the penitentiary.

The indictment charged appellant with the murder of Jim Wiggins, in Shelby County, on the 27th day of December, 1895.

The following statement of the case, which is substantially correct, is taken from the brief of counsel for appellant:

The appellant and deceased were neighbor boys about the same age, scarcely 21 years old, who had been friends, and whose parents had been neighbors and friends all their lives. About one month prior to his death, the deceased and appellant went together to a negro gathering, and the former shot and killed a negro. About six weeks prior to the killing of the deceased, a young lady cousin of the deceased, came to the residence of deceased's father on a visit. During this time appellant and the deceased paid her considerable attention, and the theory of the State is, that the killing was the result of the rivalry between the boys for the hand of the young lady, Miss Louisa Wiggins. The killing occurred in the night time at a party of young people gathered at the private residence of Pompey Tom Brittain, a mutual kinsman of the appellant and deceased, between 10 and 11 o'clock. The young people, among whom were appellant and deceased, had engaged in playing games two or three hours, when the appellant seemed to become angry with one Morovin Eddins, a 15-year old boy, and was induced to leave the house, and to go outside the yard gate, a few steps away. Here a crowd soon gathered, attracted there probably by the conduct of the appellant, who continued to talk about the boy, Morovin, abusively, and to wave his pistol about his head, saying in effect, that no kid could insult a girl he was with. Several tried to get appellant to hush, and to put his pistol away, which he did temporarily, but shortly resumed, and was again thus engaged, when Pompey Tom Brittain and the deceased walked up to the crowd, and advancing upon the appellant, who retreated, still cursing the boy, who was not present, and waving his pistol, asked him (appellant) not to do that way. When deceased and ·Pompey Tom Brittain had reached within a few feet of appellant, perhaps five to seven, the pistol was discharged, and the deceased received his death wound. As soon as appellant was informed that deceased was shot, he begged those present not to let deceased die, saying, he (deceased) was his best friend, that his pistol was discharged accidentally, and manifesting his distress at the time in various ways.

The appellant testified, and among other things, said that he had no remembrance of anything transpiring at the time the deceased was killed. Upon cross-examination the State proved in effect, this being

the only declaration of this fact, that the defendant was drunk at the time, and also proved that he (defendant) had been guilty of similar conduct at other private houses, and had been prosecuted and convicted therefor; also, that he had been indicted for carrying a pistol in two instances, unlawfully, and for making a simple assault.

Defendant objected to the State's asking him, as a witness, on cross-examination, if there was not pending against him three indictments charging him with misdemeanors? Defendant also objected to the after introduction of these indictments against him in evidence.

The charge in full upon negligent homicide, as given by the court, is as follows: "Homicide by negligence is that which occurs in the performance of an unlawful act. An unlawful act is such acts as by the penal law are called misdemeanors. To constitute the offense there must be an apparent danger, causing death of the person killed or some other. The want of proper care and caution distinguishes this offense from excusable homicide. The degree of care and caution is such as a man of ordinary prudence would use under like circumstances. To bring the offense within the definition of homicide by negligence of the second degree, there must be no apparent intention to kill. To rudely display a deadly weapon near a private house where people have assembled for amusement, in a manner calculated to disturb said people there assembled, is a misdemeanor under the penal laws of this State. Homicide is the destruction of the life of one human being by the acts, agency, procurement or culpable omission of another. Homicide is excusable when the death of a human being happens by accident or misfortune, though caused by the acts of another who is in the prosecution of a lawful object by lawful means. If you should find that the defendant shot and killed the deceased with a pistol, and the act of shooting and thus killing Wiggins was an accident, and was such an act as a man of ordinary prudence would do under like circumstances, then you will acquit the defendant; or if you have a reasonable doubt as to whether or not this is the case, you will give the defendant the benefit of the doubt and acquit him." "If the defendant, about the time and place charged in the indictment, near the private residence of one Tom Brittain, at a time when there was a gathering of people at said residence, for the purpose of innocent amusement, and the defendant, near said private residence, drew his pistol and waved it about his person and rudely displayed the same in a manner calculated to disturb the people who had there assembled; and, under these circumstances he carelessly and negligently discharged said pistol and killed Jim Wiggins without intending to kill Wiggins or any one else, then he would be guilty of negligent homicide in the second degree. And, if you believe from the evidence beyond a reasonable doubt, that the defendant, Lige Brittain, in the County of Shelby and State of Texas, about the time charged in the indictment, did, by negligence and carelessness, shoot and kill Jim Wiggins with a pistol, and, that, at the time he thus shot him, he, the defendant, was rudely displaying a pistol near the

private residence of Tom Brittain, and that people had assembled at said residence for innocent amusement, and that the pistol was displayed in a manner calculated to disturb the people there assembled, then you will convict the defendant of negligent homicide in the second degree and assess his punishment at imprisonment in the county jail not exceeding three years, or by fine not exceeding three thousand dollars."

*D. M. Short & Sons*, for appellant.—The credibility of the defendant as a witness can be attacked by evidence that he has been charged with the commission of an infamous offense, involving legal or moral turpitude, but unless the evidence is of such a nature that it might affect the credibility of said witness, it is inadmissible, and if the legal evidence is calculated to prejudice the rights of the defendant, its admission is reversible error.

The court being required to limit impeaching testimony to the purpose for which it was introduced, must determine whether the proposed testimony has the tendency to impeach, and where such testimony is to the effect that the defendant on trial has been charged with offenses against the law, not punishable in an infamous manner, and the acts ·constituting such offenses are merely *mala prohibita*, the court should exclude it, for the reason it cannot serve the purpose for which it is offered.    Peyton v. State, 32 S. W. Rep., 892; Mahoney v. State, 33 Tex. Crim. Rep., 388; Carroll v. State, 32 Tex. Crim. Rep., 431; Goode v. State, 32 Tex. Crim. Rep., 505; Lights v. State, 21 Tex. Crim. App., 308; 1 Greenl., Ev., 455; Best, Ev., 200; Whar., Crim. Ev., 8th Ed., 474.

"The rule" having been invoked, when the State in rebuttal offered the witness, Beed Wiggins, the appellant objected to his testimony be-·cause he had been present in court during the trial and had heard the testimony, and the court sustained said objection, and in response to an inquiry of the court, the State's counsel stated, that he could establish by this witness, that the witness, Tom J. Brittain, who had testified for appellant to material matters, and who had placed himself outside the ·gate and near the scene of the killing at the time thereof, and who had detailed the circumstances surrounding the same in support of appellant's theory according to the declarations of the witness, Brittain, himself, was not where he stated he was at said time, but was on the inside of the house, the doors of which were closed.    The appellant then moved the court to instruct the jury to disregard the aforesaid statement, which the court refused to do, to which refusal the appellant excepted at the time.    Lancaster v. State, ante p. 16; Hurley v. State, ante p. 73; Willson's Crim. Stat., § 2491, and the authorities there cited; Truslow v. State of Tennessee, 32 S. W. Rep., 987.

The remainder of the brief is devoted to the sufficiency of the charge ·of the court and the evidence.

*Mann Trice*, Assistant Attorney-General, for the State.

[No brief found with the record.—Reporter.]

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at five years in the penitentiary, and he prosecutes this appeal.   The first bill of exceptions brings up the question as to the admissibility in evidence of certain misdemeanors against the defendant, in impeachment of his testimony.   Evidence that the defendant had been convicted of other felonies or misdemeanors involving moral turpitude is generally held admissible, and also the fact that the defendant had been in the penitentiary, or in jail, or that he had spent much of his time in the penitentiary or jail.   There is some diversity of decision as to whether convictions for misdemeanors which do not involve moral turpitude should go to the jury for the purpose of impairing defendant's credit as a witness.   See, State v. Huff, 11 Nev., 19; Brown v. People, 8 Hun., 562.   It is also held, we believe, in the majority of the American courts, that the mere fact that a defendant, who is a witness, has been charged with other crimes, even by indictment, is not provable as going to discredit him; the principle being that the mere fact that the witness has been arrested does not prove or tend to prove that he had been convicted of another offense, and until there is proof of conviction the witness is protected by the legal presumption of innocence.   See, State v. Bacon (Or.), 9 Pac., 393.   In some States, however, the rule is different, and in our own State the greatest latitude in this respect is allowed the prosecution in the examination of a defendant when he becomes a witness.   See, Lights v. State, 21 Tex. Crim. App., 308; Woodson v. State, 24 Tex. Crim. App., 162; Carroll v. State, 32 Tex. Crim. Rep., 431.   In the first two cases above noted, it was held that it was permissible to ask the defendant, on cross-examination, if he had ever been confined in the penitentiary on a charge for crime.   In the latter case, the witness was permitted to be impeached by proof that he was then under indictment for theft.   We are aware of no case in our own courts where the defendant who becomes a witness for himself is subject to impeachment by showing, on his cross-examination, that he has been guilty or stands charged with misdemeanors which do not impute moral turpitude.   On the contrary, it has been held that such evidence is not admissible.   Goode v. State, 32 Tex. Crim. Rep., 505.   This question of impeachment by this character of evidence is said to be largely within the discretion of the court; and it is said that the courts will only permit a collateral investigation of this sort when the testimony would serve the purpose of discrediting the witness, and not merely for the purpose of laying a predicate for his contradiction.   And the authorities seem to indicate that the State will be bound by the answer of the witness, and will not be permitted to contradict him upon these collateral issues, which go merely to his credit with the jury.   Drake v. State, 29 Tex. Crim. App., 265.   See, Carroll v. State, supra; Greenl. Ev., § 455; 2 Phil. Ev., 950; Best, Ev. 200; 1 Thompson on Trials, § 469.   Now, the bill of exceptions shows that the State was permitted, upon cross-examination, to ask the defendant if there was not now pending, in the County Court of Shelby

County, three indictments against him, in one of which he was charged with assault and battery on George Brittain, and in the other two he was charged with unlawfully carrying on and about his person a pistol; and the said defendant, being required to answer said question, stated that he did not know, and subsequently the indictments in said cases were introduced against him. It would appear that these offenses were mere misdemeanors, and in ordinary acceptation do not impute any moral turpitude against the defendant; and we fail to see how the fact that he may have been charged with a simple assault and battery, and that he may have carried a pistol, would tend to show that he was lack- ing in integrity—in other words, that he was not a person worthy to be believed on his oath. Moreover, the State, not content with the wit- ness' answer, though he stated he did not know, was permitted to intro- duce this testimony for the purpose of impeaching him. This was error. It is true the court charged upon this testimony, and limited it to the purpose of impeachment of the defendant; but if the testimony did not tend to impeach, or have that effect, it was before the jury, and, notwithstanding the limitation, its effect was calculated to prejudice the defendant before the jury, and, as they might fail to see how such testi- mony might impair the truthfulness of the defendant as a witness, they might feel constrained to use it in some other way against him.

The second bill of exceptions is in reference to a statement made by the District Attorney as to what he expected to prove by the witness. Wiggins, after said Wiggins had been excluded from testifying, be- cause he had not been placed under the rule. As explained by the court, we fail to see how the statement of the District Attorney was calculated to injure the appellant. It appears that, in response to an inquiry by the court, the District Attorney merely stated that he expected to prove by said witness that one of the defendant's witnesses was not at the scene of the homicide, where he stated he was, but in the house. The defendant objected to the charge of the court, because said charge, in presenting the issue of murder in the second degree on implied malice, stated "that, if the shooting was done under circumstances not showing on the one hand express malice, and not showing on the other any jus- tification, excuse, or mitigation, and that it was intentional and unlaw- ful, it would be a murder upon implied malice," and failed to define manslaughter and the circumstances of justification or excuse. Man- slaughter was not given in this case, nor did the evidence call for such a charge; nor was justifiable homicide presented to the jury, as there was no evidence presenting the defense. The court, however, did give excusable homicide. We have heretofore held that, where there was no evidence calling for a charge on manslaughter or justifiable homicide, it was not necessary, in explaining a charge on murder in the second degree, for the court to define manslaughter and justifiable homicide. See, McGrath v. State, 35 Tex. Crim. Rep., 413; citing, Childs v. State, 35 Tex. Crim. Rep., 573. The charge of the court on temporary in-

sanity was in accordance with the opinion in the Evers case, 31 Tex. Crim. Rep., 318.

Appellant complains because the court charged the jury that the defendant was excusable, and not guilty of negligent homicide, if he killed the deceased accidentally, and in the performance of a lawful act. The ground of the defendant's objection was that there was no evidence presenting the issue of excusable homicide. In one sense, it might be said that this charge was for the benefit of the appellant, and he could not be heard to complain. Inasmuch, however, as the appellant excepted to the charge of the court as given on negligent homicide, because the same was not full enough, and because the court failed to charge negligent homicide of the first degree, and also asked charges covering these phases of the case, we will discuss these questions all together. The charge of the court on negligent homicide and excusable homicide are as follows: "If the defendant, about the time and place charged in the indictment, near the private residence of one Tom Brittain, at a time when there was a gathering of people at said residence for the purpose of innocent amusement, and the defendant, near said private residence, drew his pistol, and waved it about his person, and rudely displayed the same, in a manner calculated to disturb the people who had there assembled, and under these circumstances carelessly and negligently discharged said pistol, and killed Jim Wiggins, without intent to kill Wiggins or any one else, then he would be guilty of negligent homicide in the second degree." The charge on excusable homicide is as follows: "Homicide is excusable, when the death of a human being happens by accident or misfortune, though caused by the hands of another who is in the prosecution of a lawful object by lawful means. If you should find that the defendant shot and killed the deceased with a pistol, and the act of the shooting and thus killing Wiggins was an accident, and was such an act as a man of ordinary prudence would do under like circumstances, then you will acquit the defendant; or, if you have a reasonable doubt as to whether or not this is the case, you will give the defendant the benefit of the doubt, and acquit him." The testimony shows unquestionably that the defendant, on the occasion of the homicide, was off of his own premises, at a party or dance in the neighborhood, and carrying a pistol on his person. The testimony also shows that there was an entertainment or dance at the house where the homicide was committed, and the killing occurred out in the yard, a short distance in front of the house. A number of boys who had been engaged in the party were out in the yard talking and laughing, the defendant being among the number. He complained that a certain one of the boys had offended his girl, and that he did not propose to submit to it, pulling his pistol out, and flashing it around. He was prevailed on to put it up. A short while thereafter he renewed this conduct, and pulled his pistol out, and flashed it around again. About this time Pompey Brittain and Jim Wiggins, the deceased, walked up to the crowd. As testified to by the State's witnesses, "Jim

said to Lige, 'Hold up; don't do that way.' At the same time he walked towards him, and Lige began to step back, and said at the same time, 'I'll be damned if I do,' and at the same time he threw up his pistol, cocking it as he threw it up, and threw the pistol down on Jim Wiggins and fired it." The defendant's testimony tended to show that he was waving the pistol around, and did not draw or present it on Jim, and that it fired and killed deceased accidentally. Appellant's having and carrying a pistol on the occasion in question was a violation of law, and if he carried it in such a negligent manner as to endanger the lives of the persons there assembled, without any apparent intention to kill, the act of killing under such circumstances, would be negligent homicide of the second degree. Yet this phase of the case was not presented to the jury at all, the court seeming to apprehend that the killing sprang out of the act of rudely displaying the pistol, at or near a private residence, in a manner calculated to disturb the inhabitants of said private house, under Art. 334 of the Penal Code. Of course, the mere act of carrying the pistol on appellant's person, if the act of killing could not be attributed to that, would not constitute the act of negligent homicide. There must be, by such act, an apparent danger of causing the death of the person killed, or some other; that is, if the killing itself did not spring out of the unlawful act of carrying the pistol, or was not proximately connected with said unlawful act of carrying a pistol, notwithstanding said act of carrying a pistol was unlawful, still, in our view, the homicide, not being attributable to a negligent carrying of the pistol might be an excusable homicide. Certainly, if the homicide itself sprang out of the act of unlawfully carrying a pistol merely, it would not be negligent homicide of the second degree, which is predicated upon the doing of an unlawful act negligently; and the court's charge on excusable homicide was doubtless based upon the above-stated view. However, we fail to see how the act of displaying the pistol on the occasion alluded to can be severed from the act of carrying a pistol on and about the person of the appellant; and, if he was so displaying it, and such display was negligent, and in a manner calculated to endanger the lives of persons standing around, and it was discharged, and deceased was killed, it would constitute the act of negligent homicide of the second degree. Now, the court charged negligent homicide of the second degree, but said charge was solely predicated on Article 334, with reference to displaying a pistol near a private house, and not at all upon Art. 338, Penal Code. The jury may not have believed that the pistol in question was displayed near a private residence in a manner calculated to disturb the inhabitants thereof; the occasion being in the night time, and some little distance from the private residence, and where only a few persons, who had formerly been in the private residence, were congregated. If the charge based upon Article 338, had been given to the jury, predicated upon the idea, as before stated, that the defendant was unlawfully carrying a pistol, they might have been willing to convict the appellant of negligent homicide, though not will-

ing to acquit him altogether on the ground of excusable homicide. In this view of the case, it is no answer to the proposition to say that the defendant had a more liberal charge than he was entitled to. See, Mitchell v. State, ante p. 278. In our opinion, the evidence called for a full and fair charge on negligent homicide, covering both phases of the case, and presenting Arts. 334 and 338, of our Penal Code. The testimony on the part of the State tended to show that appellant intentionally shot the deceased, but there is also testimony tending to present the contrary theory; that is, that it was an accident, but when defendant was doing an unlawful act. His expression, immediately after the shooting, that it was an accident; his taking the deceased by the arm, and going with him to the gallery of the house; his statement to the parties to do all they could for his friend; and, afterwards, that he had killed the best friend he had; and the impression that seemed to prevail there at the time, that it was accidental, indicated, even by the conduct of the brother of the deceased towards the defendant that night—called for a full and fair charge on negligent homicide of the second degree. An exception was made to the court's charge, and also additional charges were asked by the appellant, which all served to call the attention of the court to this phase of the case, and in our opinion, the court's charge was not full enough, and a charge fully and fairly presenting negligent homicide should have been given. It is not necessary to discuss the other errors assigned, and the judgment of the court is reversed, and the cause remanded.

*Reversed and Remanded.*

HURT, Presiding Judge, and DAVIDSON, Judge, concur in the opinion, except that portion of it with reference to the charge on negligent homicide. Under our view of the case, the court's charge was a direct and pertinent application of the law to the facts adduced, which we understand to be correctly stated in that portion of the charge as given by the trial judge. We do not think the testimony raised the issue of excusable homicide.