FRED SCHACKEY V. THE STATE.

No. 2116.   Decided November 22, 1899.

**1. Homicide—Principal.**

A female witness is not a principal to a homicide where it is not shown that she acted with the parties or advised or agreed to the commission of the offense. Her relations as paramour to one of the parties committing the crime is not of itself sufficient to constitute her a principal. The mere fact that she knew the offense had been committed, and remained silent, will not make her a principal; nor will the further fact, that on the following day she concealed her knowledge of her paramour's connection with the crime, make her a principal.

**2. Same—Accessory.**

An accessory, under our statute, Penal Code, article 86, is one who conceals an offender or gives him aid in order that he may evade arrest or trial, or the execution of his sentence. The aid contemplated by the statute evidently must be personal aid to the party sought to be benefitted.

**3. Same.**

On a trial for murder, where it appeared that the witness might have been an accessory to her paramour, who was one of the parties implicated, but who

was not upon trial, still, this alone would not constitute her an accessory to his confederate, who was being tried. There may be an accessory to any one of several parties to a consummated crime. He may render assistance so as to avoid the execution of the sentence upon any one of the parties and yet give information to prevent the escape of others. The relation of accessory is a personal one to the offender to whom the aid is given.

**4. Alibi—Charge—Reasonable Doubt.**

While it would be better to directly apply the reasonable doubt to alibi, where alibi is charged upon, still a failure to do so will not constitute reversible error where the court gives a sufficient charge upon reasonable doubt generally.

**5. Conflicting Evidence—Practice on Appeal.**

It is not within the province of the court on appeal to reverse a judgment) simply upon the ground that the main State's witness has been disparaged; in other words, wherever there is a conflict in the testimony, and that for the State is sufficient to authorize the verdict, this court will not interfere.

APPEAL from the District Court of Washington. Tried below before Hon. ED. R. SINKS.

Appeal from a conviction of murder in the second degree; penalty, seven years imprisonment in the penitentiary.

The indictment charged one Reinhardt Fisher, and the appellant, jointly, with the murder of Henry Kramer on the 1st day of February, 1899. It contained two counts, (1) charging the murder to have been committed by striking deceased on the head and body with some blunt instrument; (2) by striking and knocking deceased down with a stick on a railroad track before an approaching train thereon, with the intent to cause said train to run over and kill deceased, which said train did. Appellant was alone tried in this proceeding, a severance having been ordered in the case.

In brief, the evidence as shown by the statement of facts, is substantially: That deceased, Henry Kramer, lived at Greenvine, Washington County. On the day of the homicide he came to the city of Brenham with his friend and neighbor, C. W. Fischer, reaching Brenham about 3 o'clock in the afternoon. The parties visited several saloons during the afternoon and at night, and were drinking pretty freely. At one or more of the saloons Kramer, the deceased, treated the defendant, Reinhardt Fisher, and other parties, exhibiting his pocketbook, with some greenbacks and silver in it, at the time he paid for the drinks. During the night Schackey and deceased got into a difficulty about a game of cards which they had played at one of the saloons, and Schackey slapped deceased. They then shook hands and made friends. Subsequently they had another fuss, and defendant claimed that Kramer owed him money, and he knocked Kramer down. Kramer then left the saloon, saying that he was going off to go to bed.

The State's witness, Mary Eliza Hadley, and the only one connecting the appellant directly with the killing of Henry Kramer, was a colored prostitute. She testified that Reinhard Fisher, who was jointly indicted with appellant, was her paramour, or, as she expressed it, was her friend, and that she frequently went to his room and stayed with him. That on the night of the killing Schackey, Kramer, Fisher,

and herself left the Klondike Saloon together after 10 o'clock; that Schackey and Kramer went out of the saloon together and she and Fisher just behind them. That after getting out of the saloon Schackey called Fisher and they talked low a minute or two, when Schackey and Kramer went off in the direction of Gus Schumaker's saloon, and she and Fisher went on to her house, which was about fifty yards from the arch under the Santa Fe Railway track. They stopped at the gate a few minutes, when two men came down the track; one of them whistled; she recognized it as the whistle of Schackey. When he whistled Fisher ran on to meet them. She followed on after him until she reached the arch under the railway track, and she saw Schackey and Fisher take hold of Kramer, strike him with a stick, knock him down, and run off, and the train ran over him. She gave no alarm; went home; stayed all night; did not say anything to her mother or anyone else about what she had seen. The next morning she met Fisher at the Klondike Saloon, where he told her to go to Emily Hubert's and he would be there in half an hour. She went to Emily Hubert's, where Fisher met her. Fisher told her if the officers got her up in court to say that Schackey did the killing and to swear that she did not see him (Fisher) or Will Fletcher after she left the Klondike Saloon. At the inquest she swore Schackey did the killing, and that Fisher had nothing to do with it. She admits that she swore a lie, but claims she did it because she was afraid of Fisher. This woman was shown to be addicted to cocaine, and was impeached by several witnesses as to her reputation for truth and veracity.

*Searcy & Garrett* and *B. F. Teague,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State; *W. C. Henderson,* also for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of the murder of Henry Kramer, and his punishment assessed at seven years confinement in the penitentiary.

His first contention is that the witness Hadley was a principal; and second, an accessory. She alone testified directly to appellant's connection with the homicide. The killing occurred about 11 o'clock at night, on a railroad track near the long bridge at Brenham. On the night of and prior to the homicide, this witness, Reinhardt Fisher, Will Fletcher, appellant, and others were at the Klondike Saloon. Appellant and deceased, Kramer, went out of the saloon together. Witness and Fisher left shortly afterwards, in company with each other. As she and Fisher reached the street, appellant called Fisher to one side, and had a conversation with him. Fisher then rejoined witness, and went with her to the yard gate at her residence, where they stood for a quarter to a half hour, engaged in conversation, when

41st Crim. Rep.—17

she noticed appellant and deceased coming down the railroad track. She heard appellant whistle. Fisher responded, and went to where appellant and deceased were. She followed to see what the parties were going to do. She saw them take hold of deceased, and one of them inflicted a blow on his head with a club, which caused him to fall. At this juncture a freight train approached, and appellant and Fisher ran off; one of them remarking, "There now, you have killed that man." The body of deceased was either left or thrown on the railroad track, and the train ran over it. When the train passed, the parties returned to the body, and one of them said, "Let's search his pockets." This witness further says: "I know it was Schackey, because I recognized his voice. I know his whistle. I ran up to the foot of the arch, about thirty feet from them." It was from this point she saw the infliction of the blow. This witness was the mistress of Fisher. This is, in substance, her testimony in regard to the homicide. On the next day Fisher approached this witness, and by persuasion and threats induced her to agree not to testify against him as to this transaction. He notified her the officers were in pursuit of her as a witness. She agreed to testify that Fisher had nothing to do with the homicide, and at Fisher's instigation she agreed also to place the responsibility of the killing upon appellant. On the inquest she testified in accordance with this agreement. She limited the responsibility of the homicide to appellant. On the inquest she makes him alone responsible, but on the final trial she implicates both Fisher and appellant. Now, under this evidence, was the witness a principal in the murder, and is she an accessory to Schackey? Appellant contends that, if she was not a principal then she is an accessory, and that her testimony would need corroboration, and the court should have so instructed the jury. We do not understand that this testimony makes her a principal. Hers is the only evidence that tends to connect her with the crime in any way, and if we concede everything she states to be true in regard to her knowledge of the offense and her proximity at the time of its commission, there is no evidence which shows she acted with the parties, or advised or agreed to the commission of the offense. Her relations to her paramour did not make her a principal. The fact that she was at her gate, talking with her lover, when appellant came down the railroad, does not indicate a conspiracy, or a criminal presence, or an acting together with either Fisher or Schackey, so far as the homicide is concerned. Nor does the fact that she followed Fisher out of curiosity to see what the parties intended to do show a guilty participancy. The evidence does not indicate she had any intimation or knowledge, or even suspicion, that Fisher and appellant intended to kill Kramer, until she saw the enactment of the tragedy. The mere fact that she knew the offense had been committed, and remained silent, will not make her a principal; nor will the further fact that the following day she concealed her knowledge of Fisher's connection with it, make her a principal. Tullis v. State, 41 Texas, 598;

Ring v. State, 42 Texas, 282; Burrell v. State, 18 Texas, 713; Noftsinger v. State, 7 Texas Crim. App., 302; Rucker v. State, Id., 550; Golden v. State, 18 Texas Crim. App., 637; Smith v. State, 23 Texas Crim. App., 358; Smith v. State, 28 Texas Crim. App., 309; Floyd v. State, 29 Texas Crim. App., 349; Walker v. State, 29 Texas Crim. App., 621; Alford v. State, 31 Texas Crim. Rep., 299. It is not necessary to cite any further authorities on this question.

Now, as to the question of accessory, our statute provides that: "An accessory is one who, knowing that an offense has been committed, conceals the offender, or gives him any other aid in order that he may evade an arrest or trial, or the execution of his sentence. But no person who aids an offender in making or preparing his defense at law, or procures him to be bailed, though he afterwards escapes, shall be considered an accessory." Penal Code, art. 86. In order to constitute a party an accessory, his act must bring him within the purview of this statute. Now, if Hadley was an accessory, it was by reason of the fact that she agreed with Fisher to testify that he was not present, and had no connection with the killing of Kramer. She never at any time testified to facts exonerating Schackey, but, on the contrary, on the inquest as well as on the final trial she directly inculpated him. If it be conceded that her acts would have made her an accessory to Fisher, still the testimony shows positively that she was not aiding Schackey in any manner either to conceal him, or render him any other assistance. It is not necessary in this opinion to discuss the question as to whether she would have been an accessory to Fisher, as he was not on trial. In Chitister's case, 33 Texas Criminal Reports, 635, it was held: "In order to render the witness an accessory, he must have concealed the accused, or given him some aid so that he may have evaded an arrest, or trial, or the execution of his sentence. This was not done. The witness did accept the property, and also agreed to leave the State. He, however, did not leave the State; and it is shown that he sought the bribe as a means of securing testimony for the purpose of convicting appellant for the theft of the animal set out in the indictment. He was active in the prosecution of the case, and testified in behalf of the State on the trial. This evidence did not require a charge upon the law applicable to accomplice testimony, and the court did not err in failing to so charge." Now, the witness did not at any time undertake to do anything, or swear to any fact which exonerated appellant. Nor did she in any manner aid him at any time from the homicide to final conviction, but was the principal witness against him from the time the case was under investigation. Not only so, but she agreed with Fisher that she would not only not exonerate Schackey, but that she would testify to facts which alone implicated him in the homicide; and in pursuance of this agreement did so testify. How, under this state of case, this party could have been an accessory, we do not understand. She not only did not give any aid, or in any way assist him, but she agreed and actually did swear the

whole responsibility, of the homicide upon him. If this is aiding an offender to escape punishment, we do not understand the effect of testimony. An accessory, under our Code, is one who conceals an offender, or gives him some other aid, in order that he may evade an arrest or trial, or the execution of his sentence. Now, this aid, etc., evidently must be personal aid to the party sought to be benefited. The' party is not an accessory because of any connection with the crime itself, but by reason of the fact that he rendered aid to a particular offender in some manner prohibited by the statute, after the crime has been fully committed. In Clark's Criminal Law, section 49, the rule is stated as follows: "It is essential that the assistance shall be rendered to the felon personally, and there must in all cases be knowledge that the person has committed a felony." See also Loyd v. State, 42 Ga., 221. Mr. Bishop thus states the rule: "The test of an accessory after the fact is that * * * he renders his principal some personal help to elude punishment; the kind of help being unimportant." "Keeping a witness by persuasion or intimidation from appearing against a felon on his trial does not render one the felon's accessory, though it is punishable as a misdemeanor." Sec. 695, subdiv. 3. In section 1068 of the same work we find this language: "We learn from the elucidations of the first volume that an accessory after the fact in felony is one who in any way aids the principal felon, whom he knows to be guilty of the felony, to elude punishment." And this same doctrine is laid down in the first volume of American and English Encyclopedia of Law, pages 72, 73, where many authorities may be found collated. If these authorities are correct, then appellant's proposition that an accessory becomes one by reason of his connection with the crime, and not the offender, is not tenable. A party may be a principal of an accomplice to a crime, but can not be an accessory to such crime. It is only the completed crime which renders an accessory a possibility. There may be an accessory to any one of several parties to a consummated crime. Means of escape may be furnished one defendant, and not the others. A party may become an accessory to one offender by concealing him, and yet cause the arrest of others who may be connected with the crime. He may render assistance so as to avoid the execution of the sentence upon one of the convicted parties, and yet give information which prevents the escape of others. So it is very clear that the relation of accessory is a personal one to the offender to whom the aid is given, and is only found in the fact that assistance is rendered to the particular offense, and that the party can not be an accessory by reason of his connection with the crime itself.

The court charged the jury with reference to the evidence introduced to prove alibi. The charge given is correct, unless erroneous in failing to directly apply the reasonable doubt. While it would have been better to have so charged directly and pertinently in that connection, we do not think it reversible error that it was not done. We

have been cited to no authorities that so hold. The court did give a charge on the reasonable doubt, and this has been held in many cases to be usually sufficient.

The remaining contention is the insufficiency of the evidence to support the conviction. The State relied mainly upon the witness Hadley. In addition to the facts already stated, it was shown that she was a negro prostitute of a low order; that she was a cocaine fiend, generally disreputable, and the mistress of the codefendant, Fisher. There was evidence from other sources showing that Schackey was in company with deceased a large portion of the time during the night to within a few minutes of the homicide; that they had had difficulties during the evening, and that appellant had struck him a time or two, and perhaps knocked him down during one of the altercations. They disappeared about the same time, one perhaps a little in advance of the other, from the Santa Fe Saloon; and within a half hour or less, deceased was killed some 400 yards from said Santa Fe Saloon, on the railroad track, and either left on the track in front of the approaching train, or hurriedly thrown there after being knocked down with the stick. The credibility of the witnesses was a matter which our law has confided exclusively to the jury. She may have been all that the witnesses say of her, and yet the jury have credited her testimony. They also heard the evidence of the witnesses who testified disparagingly of her. We understand that it is not within the province of the court to reverse judgments simply on the ground that a witness has been disparaged; in other words, wherever there is a conflict in the testimony, and that for the State is sufficient to authorize a verdict, this court will not interfere. The judgment is affirmed.

*Affirmed.*

[NOTE.—Appellant's motion for rehearing was overruled without a written opinion.—Reporter.]