The other matters complained of present no error.

For the error pointed out, the judgment is reversed, and the cause is remanded.

---

## PINCKARD v. STATE.

(Court of Criminal Appeals of Texas. May 10, 1911. Rehearing Denied June 21, 1911.)

**1. CRIMINAL LAW (§ 77*)—"ACCESSORY AFTER THE FACT"—ASSISTANCE.**

A wife does not become an accessory after the fact because after the arrest of her husband and defendant she told persons, who inquired, that she knew nothing of the offense charged against them, though she was cognizant of their criminal acts, for an accessory is one who conceals the offender or gives him aid.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 95; Dec. Dig. § 77.*

For other definitions, see Words and Phrases, vol. 1, pp. 60, 61.]

**2. WITNESSES (§ 325*)—IMPEACHMENT—CONCLUSIVENESS OF ANSWER OF WITNESS.**

Defendant seeking to impeach a witness for the state by showing that he has committed a criminal offense, involving moral turpitude, is bound by the answer of the witness, denying that he has been guilty of the offense.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1098; Dec. Dig. § 325.*]

**3. WITNESSES (§ 297*)—PRIVILEGE OF WITNESS—QUESTIONS TENDING TO INCRIMINATE.**

A witness sought to be impeached on the ground that he has committed a crime involving moral turpitude cannot be compelled to furnish evidence upon which a criminal prosecution might lie against him.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1026; Dec. Dig. § 297.*]

**4. WITNESSES (§ 52*) — CONFIDENTIAL RELATIONS—HUSBAND AND WIFE.**

A wife, by whose testimony her husband is sought to be impeached as a witness, cannot be compelled to testify that her husband has been guilty of a criminal offense, involving moral turpitude.

[Ed. Note.—For other cases. see Witnesses, Cent. Dig. §§ 124–136; Dec. Dig. § 52.*]

**5. WITNESSES (§ 269*)—CROSS-EXAMINATION—SCOPE.**

New matter not covered by the examination in chief which may be used against her husband cannot be elicited from the wife on cross-examination.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 949–954; Dec. Dig. § 269.*]

**6. CRIMINAL LAW (§ 518*)—EVIDENCE—CONFESSIONS.**

A written confession by one accused of crime, reciting that, "the following is a voluntary statement of P. [accused] made to me T. [a justice of the peace] on this 21st day of May, 1909, after having first been duly warned by me, T., that he did not have to make any statement at all, and that any statement made may be used in evidence against him on his trial for the offense concerning which the confession is therein made," shows a compliance with all the requirements of law, and is admissible in evidence.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1160; Dec. Dig. § 518.*]

**7. CRIMINAL LAW (§ 814*)—INSTRUCTIONS—CONFESSIONS.**

Where a witness requested accused to confess as to his crime, telling him that a code-fendant had confessed but held out no hope to accused, and a confession was made under those circumstances, charges upon the issue of whether the confession was voluntarily made or not were properly refused; there being no evidence to support it.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1865; Dec. Dig. § 814.*]

**8. CRIMINAL LAW (§ 519*)—EVIDENCE—CONFESSIONS—ACTS OF JAILER.**

A defendant in jail is entitled to confer with his attorney whenever he desires, and the officers having him in charge should not, instead of communicating his request to his attorney, seek to elicit a confession; and a confession obtained in such a manner is insufficient to support a conviction.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1167; Dec. Dig. § 519.*]

**9. ARSON (§ 25*)—OWNERSHIP OF BUILDING—COMMUNITY PROPERTY — STATUTES — VARIANCE.**

Though, under Sayles' Ann. Civ. St. 1897, arts. 2968, 2969, providing that all property acquired by either husband or wife during marriage shall be deemed common property, and that during coverture it may be disposed of only by the husband, a house purchased by the husband with his earnings after marriage, and the deed taken in the name of the wife, is community property, an indictment for a criminal burning of the house properly alleged the ownership to be in the husband, and proof that the property was purchased with the husband's earnings, and that the deed was taken in the name of the wife did not establish a variance.

[Ed. Note.—For other cases, see Arson, Cent. Dig. § 54; Dec. Dig. § 25.*]

Appeal from District Court, Polk County, L. B. Hightower, Judge.

Odell Pinckard was convicted of arson, and appeals. Affirmed.

J. Holshousen and F. Campbell, for appellant. C. E. Lane, Asst. Atty. Gen., for the State.

HARPER, J. In this case appellant was indicted, charged with the offense of arson. Upon a trial he was convicted in the district court of Polk county, Tex., and his punishment assessed at five years confinement in the penitentiary.

1. It appears from the record in this case that Tom Pinckard turned what is termed "state's evidence," and testified, in effect, that he and defendant burned the house in question. The wife of Tom Pinckard was used as a witness by the state, and the defendant complains, first, that the court refused to give a special charge requested instructing them that Mrs. Pinckard was an accomplice, and her testimony should not be considered as corroborative of that of Tom Pinckard, the admitted accomplice; second, it was complained that defendant offered to prove, and could have proved, by said witness, that her husband, Tom Pinckard, had brought home a pitcher and some other articles alleged to have been stolen by her husband.

[1] As to whether or not Mrs. Pinckard was an accomplice after the fact, or rather

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

an accessory, by reason of the fact that she testified on the trial of this case that defendant on the day the house was burned had called her to the door and pointed out the burning building, and told her that he had burned the building alleged to have been burned in the indictment, and admitted that, when her ·husband and defendant had been arrested charged with the offense shortly after the house was burned, she denied any knowledge of the circumstances, is the question to be decided. Both the defendant and the husband of the witness were under arrest and in jail at the time she admits she told Andy Franklin and·others that she did not know anything about it. Does the. fact that a witness denies knowledge of a crime to persons inquiring who are not officials make such person an accessory? We do not think so. In the case of Chenault v. State, 46 Tex. Cr. R. 354, 81 S. W. 972, this court says: "Article 86, Penal Code, provides: 'An accessory is one who, knowing that an offense has been committed, conceals the offender, or gives him any other aid in order that he may evade an arrest or trial, or the executions of his sentence.' The proffered evidence, as disclosed by the two bills above, is insisted by appellant as being ·pertinent evidence in this case, upon the theory that the same would' prove that the witnesses were accessories to the forger. We hold that said testimony is not admissible for this purpose. No one in this state can be an accessory after the fact, such as disqualifies him as a witness, unless he comes within the letter and spirit of the article above quoted; that is, he must give some aid and assistance to the principal before he can be guilty. In other words, he must conceal the offender or give him some other aid in order that he may evade an arrest or trial. The aid· here contemplated is such as furnishing him with a horse to flee upon, or giving him a gun with the view of resisting arrest for the offense, or some other overt active assistance. The evidence going to disqualify a witness must be of sufficient force to convict him of accessory to the crime before such witness would be an accessory. In Schackey v. State, 41 Tex. Cr. R. 255, 53 S. W. 877, quoting from Mr. Bishop, we said: 'That the test of an accessory after the fact is that he renders his principal some personal help to elude punishment; the kind of help being unimportant. Keeping a witness by persuasion or intimidation from appearing against a felon on his trial does not render one the felon's accessory, though it is punishable as a misdemeanor.' And further: 'That we learn from the elucidation of the first volume (of the same author) that an accessory after the fact in felony is one who in any way aids the principal offender, whom he knows to be guilty of the felony to elude punishment.' 'One is not an accessory who merely neglects to make known to the officers that a

felony has been committed, or who forbears to arrest the felon or agrees not to prosecute him. Keeping a witness by persuasion or intimidation from appearing against a felon on his trial does not render one the felon's accessory. 1 Bishop, Crim. Law, § 694. Nor does the fact that one agrees for money not to give evidence against a felon or knows of the felony and does not disclose it make the party an accessory after the fact. There must be some independent criminality to make one an accessory.'" See, also, Prewett v. State, 41 Tex. Cr. R. 262, 53 S. W. 880; Elizando v. State, 31 Tex. Cr. R. 243, 20 S. W. 560, and cases cited.

[2-4] Upon the second proposition, that the wife should have been permitted or required to testify to facts that would show her husband, Tom Pinckard, guilty of another and different offense, involving moral turpitude, we do not think the court erred in excluding or failing to permit said testimony to be adduced from the wife. In the first place, Tom Pinckard, while on the witness stand, had denied such facts, and refused to testify in regard thereto on the ground that it might tend to criminate him in another and different offense. This testimony was adduced by defendant for the purpose of impeachment, and defendant was bound by the answer of the witness. It does not appear from the record that Tom Pinckard had ever been indicted or charged with such an offense, except that such appears from the questions propounded by defendant, and the witness Pinckard nor his wife could not be compelled to furnish evidence upon which an independent criminal prosecution might be based. Brittain v. State, 36 Tex. Cr. R. 410, 37 S. W. 758.

[5] New matter not covered by the examination in chief, which may be used against her husband, cannot be elicited from the wife on cross-examination. Creamer v. State, 34 Tex. 173; Greenwood v. State, 35 Tex. 587; Washington v. State, 17 Tex. App. 197; Gaines v. State, 38 Tex. Cr. R. 202, 42 S. W. 385.

[6] 2. The defendant also complains of the admissibility of an alleged confession of defendant. At request of defendant, the original paper is sent up for our inspection. It reads: "The State of Texas, County of Polk. The following is the voluntary statement of O. D. Pinckard made to me, M. S. Tew, on this the 21st day of May, A. D. 1909, after having first been duly warned by me, M. S. Tew, that he did not have to make any statement at all, and that any statement made may be used in evidence against him on his trial for the offense concerning which the confession is therein made: 'Me and Tom Pinkard went a cow hunting and come by Nickolas house and he said lets burn Nickolas house now is a good·time we wouldn't be caught up with. he brought the wood in and I set fire to it. and he sat down there to see that I fired .it. [Signed] O. D. Pinckard.' Witnessed by M. S. Tew. E. H. Garvey."

Under all the decisions of this court, such statement was admissible in evidence, as the warning, etc., complied fully with the statute on that question. Jenkins v. State, 131 S. W. 543, and authorities there cited. All the requisites held essential by a majority of the court in that case are complied with in this confession.

[7] Defendant insists that the question of whether or not it was voluntarily made should have been submitted to the jury, and asked several special charges in regard to this matter, which were refused. If the issue of whether voluntarily made or not was fairly raised by the evidence, then it was a question for the jury to determine. The only evidence in the record on this point was from the witness Garvey, introduced by defendant. Garvey testified that he went to defendant on two or three occasions and sought to induce him to tell him what he knew about the matter. The witness says he went so far as to tell this defendant that Tom had told all about it. Defendant on these occasions denied all knowledge of the burning of the house, but at a later date, while he was giving defendant his dinner, he voluntarily told witness (Garvey) about the matter. That he (Garvey) then went to the justice of the peace, Mr. Tew, and told him what defendant had said, and Mr. Tew went to the jail and defendant voluntarily made and signed the statement to Mr. Tew introduced in evidence. This was all the evidence in regard to the matter. No hope was held out to defendant, no threat nor any inducement offered, and the record being in this condition, the witness being offered by defendant, we cannot say that the court erred in not giving the special instructions requested. In the case of Zwicker v. State, 27 Tex. App. 539, 11 S. W. 633, it is held that, where there is no evidence raising the issue of whether voluntarily made or not, there was no error in refusing a special instruction submitting that issue.

[8] 3. However, we desire to say in this connection there is a matter suggested by the record that we do not approve. It appears that, as soon as defendant was placed in jail, he requested that the attorneys now representing him be sent for, that he desired to talk with them about his case, and they were not sent for until after he had made the confession introduced in evidence. If the evidence eliminating this confession did not show appellant's guilt beyond a reasonable doubt, and in the record there was any evidence refuting the state's case, we would feel inclined to reverse this case because of such conduct. A defendant in jail is entitled to confer with his attorney when he requests permission to do so, and an officer having him in charge, instead of seeking to elicit a confession, after a request had been made to confer with attorneys, if a defendant really made a confession before his at-

torney was sent for, it ought to appear that an effort had been made to get word to the attorney, and that a defendant knew the attorney of his selection would come to see him or had refused to do so. Advantage of no kind or character ought ever to be taken of a prisoner in jail charged with crime, even to obtain the conviction of the giulty, but each and every one should be granted all the rights and privileges guaranteed to them under the law, and, if the question of defendant's guilt or innocence was dependent upon the confession thus obtained, we would be loathe to let the conviction stand. But, as hereinbefore stated, inasmuch as the testimony, in addition to the confession, shows that defendant set fire to the house in question, and there is no testimony in the record tending to refute this evidence or show that defendant was not present participating in the offense, and he received the lowest penalty, we will not reverse the case, but here express our disapproval of such practice.

[9] 4. Appellant also complains that the evidence did not show the house burned to be the property of the party alleged (C. W. Nickles), and, while the motion for a new trial was being heard, introduced in evidence a deed to the property from T. W. Acre to Mrs. Mattie Nickles, the wife of C. W. Nickles. C. W. Nickles was placed on the stand, and testified: "When I came here, I bought this piece of land from Acre and his wife, and had the deed made in her name. I paid for it out of the earnings I earned after I married her." There was no other evidence offered as to the ownership of the house, and this would make it the community property of defendant and his wife. Under our laws all property acquired by either husband or wife during the marriage (except that which is acquired by gift, devise or descent) is deemed their community property, and during the marriage relation may be disposed of only by the husband. See articles 2968, 2969, Rev. Civ. Stat. 1897. The building was properly alleged to be the house of C. W. Nickles, as in arson a person in control of a building may be alleged as the owner or occupant of the building. See Allen v. State, decided at the present term of this court, and authorities there cited.

5. The only other question in the case which is raised in a number of assignments is, Did the evidence show the house burned to be the property of the party alleged? Tom Pinckard and wife, W. M. Moye, Willie Dickens, and A. J. Franklin all speak of it as the property of C. W. Nickles, and in the evidence there was no issue raised as to this being the property of any person other than Nickles, and under all the testimony, especially if we take into consideration the confession of defendant, there can be no question that the house burned was the house of C. W. Nickles.

The judgment is affirmed.