## R. F. Gracy v. The State.

### No. 4156. Decided June 19, 1909.

### Rehearing denied October 20, 1909.

.1.—Arson—Evidence—Letter—Conspiracy.

Where, upon trial for arson, the State introduced in evidence a certain letter which was received by the defendant after the burning of the alleged house, but which showed that it was a communication by a co-conspirator directed to the defendant before the burning of said house, and while the conspiracy was pending, and was in regard to an agreement between the two to effect the burning of said house, and was written and mailed before the termination of the conspiracy, there was no error.

2.—Same—Evidence—Insurance—Acts of Co-conspirator.

Where, upon trial for arson, the issue was whether the defendant and another were acting together in a common design to insure the alleged burned house against fire, and then to set fire to same and obtain the insurance money, it was immaterial whether they set out from a certain place to go to another place for the purpose of insuring the house, and testimony that they were acting together in obtaining said insurance, with said common knowledge and design, was legitimate and admissible to prove said conspiracy.

3.—Same—Accomplice—Corroboration—Charge of Court.

Where, upon trial for arson, the principal in the alleged crime did not testify on the trial of the defendant, and the evidence showed that the defendant was a party to the crime, a charge on accomplice testimony was not authorized, although defendant was an accomplice; besides, the complaint of appellant to the court's failure to charge on accomplice testimony being raised for the first time in the motion for rehearing, came too late.

Appeal from the District Court of Coke.   Tried below before the Hon. J. W. Timmins.

Appeal from a conviction of arson; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*R. L. H. Williams,* for appellant.—On question of introducing letter in evidence:   Conde v. State, 35 Texas Crim. Rep., 98; Cleavinger v. State, 43 Texas Crim. Rep., 273; Cox v. State, 8 Texas Crim. App., 254; 8 Cyc., p. 680; 12 Cyc., p. 440.

*F. J. McCord,* Assistant Attorney-General, for the State.—On question of introduction of letter:   Thompson v. State, 19 Texas Crim. App., 593; Pierson v. State, 18 Texas Crim. App., 524; Clark v. State, 28 Texas Crim. App., 189; Conde v. State, 33 Texas Crim. Rep., 10; Foster v. State, 32 Texas Crim. Rep., 39; Pace v. State, 20 S. W. Rep., 762.

DAVIDSON, PRESIDING JUDGE.—Appellant was given a term of five years in the penitentiary for setting fire to and burning a house belonging to Hickman Cumbie Company.

The fire occurred on the night of the 28th of January, 1908. M. R. Jones had previously bought the house situated by the side of and within eighteen inches of the one mentioned in the indictment.   Appellant had gone to the little town of Bronte, where the fire occurred, a few days before the burning, to occupy Jones' house as a pool-room.   On the night of the burning appellant was sleeping in the Jones house.   He purchased some coal oil a day or so before the burning and was seen about the rear end of the house that was burned looking under and into it.   A few days prior to the burning Jones and appellant went from Bronte, where the burning occurred, to Ballinger, for the purpose of insuring the Jones house, which they did for six hundred dollars.   The house was estimated at a valuation of from three to five hundred dollars. Without going into a detailed statement in regard to the immediate environments of the fire, it is shown by the testimony that the Hickman Cumbie Company's house was first on fire and from this the Jones house caught fire and was burned.   Alexander testified that in January, 1908, he lived in Ballinger, was acquainted with appellant and saw him for the first time the day the former wrote the insurance for Jones.   That they were together in his office, appellant being present part of the time, and the conversation was confined to insurance.   This witness says that Jones and appellant came to his office and Jones said, "This is the man that is going to put in a pool and billiard hall," and Gracy said, "Yes;" and it was the understanding at the time that appellant would put in the

hall at once; that he accepted the application for insurance. In describing the building they gave a false description and represented that it was either sixty or eighty feet long and either twenty-four or twenty-six . feet ' wide. Witness had forgotten exactly. It was much smaller in dimensions. That the insurance was taken out on the building, but not on the contents; at the time it seems to have had no contents. At the time of the fire the town became aroused and many went to the scene. Appellant was there and had taken his bedding and things from the house at the time the first parties reached the place, and at which time some of the witnesses say Jones' house, or that occupied by appellant, had not caught on fire but that the Hickman Cumbie house was fully on fire. Riley testified he was engaged in the banking business and had seen appellant a few times. Along about the latter part of January appellant went into his bank and asked about a certain building and its location, etc. This was the Jones building. This witness also testified in regard to a conversation had with appellant in regard to expected money. That appellant asked him if money had come to the bank for him. After the fire the oil can which appellant had purchased a day or two before the fire was found outside and nearby the burned building. The sheriff of Lampasas County testified that he knew appellant and Jones; that they lived at Lampasas.

Appellant reserved a bill of exceptions to the introduction of the following letter, which was received by appellant at Bronte, the place of the burning, on the 29th of January, 1908, which was the day following the burning the previous night. This letter is as follows:

"1-28-1908.

"Mr. Robert F.,
· "Dear Dad.
"I received your letter asking why your tables did not come an I have went today to see about them he sad there was a morguag against Some of them and they belong to 2 Different People.

"I think Every thing will be all wright for you soon your pardner has Decided to order New Tables. When your Pardner found out that you had secured a house that suited you and you rote him to Send the table he went to Close the Trade and found they was all tied up so he decided to order knew ones.

"I am very buisy So of Course Id do any thing I can for you and him he thought best to order New ones and ask me and I thought So to any further Infermation refur to him.

"Your friend,
"M. R. J.

"P. S. your Mother is doing Nicely a wants to See you soon I see to her all the time.

"I received your letter I was Surprised when I got it I thought Ever thing was over.

"Your Proposition was all foolish if you have not let your head off at rong place.

"You ought not told any one who you had ordered anything from I dont See why you Even told them you had ordered from R for I can Say with perfectly Safety that I am not going to Risk any one Else in the Pot If you have got the thing .mixed up til Every body Knows more about the business than you do you had better let it alone.

"I dont see why if you comense west of your house why it could be question by any one you have no Interest in the house west of you it is nothing to you of Course you now what you have told Il Pro seed to order Some Tables from Brunswick Brack Calender Co this Evening I will order in your Name Juast as though you ordered them your Self then we can Counter mand the order any Time in 20 days it takes 20 days to get them out you can Show the letter I have rote you if you See fit.

"But if you do you must do it a way he will not Suspishion anything do your do and come a head I have Every thing all wright and in good shape Yours,

                                   "X. Y. Z.

"P S    Turn over        over (and the following is on the back of the last sheet) :

"If you do what you Started do you Stay there and dont be rite off like a Jug handle   Stay there about one day and try to get a nother house and find some objections to it and the next day you can come home all wright.

(Written at the bottom of the last page, and crossways of the page as follows:)

"I tried to send the money throug the Bank but they was closed So I will send it By Mail."

The bill of exceptions sets out several objections to the introduction of this letter: first, it was received at the postoffice at Bronte by appellant after the burning; second, that the letter and its contents purport to be and was the act of some person other than appellant; third, it was hearsay and written in the absence of appellant, and that independent of said letter and the statements therein contained, there was no testimony connecting the appellant with the letter or the writing or the contents thereof, or to show that he had any knowledge thereof or acquiesced in the same or any part or portion thereof, but it was the act and declaration of another for which appellant was in nowise responsible or bound. These constituted the grounds of objection enumerated in the bill. We are of opinion that this letter was properly admitted. Appel-

lant relies upon a line of authorities to the effect that the acts and declarations of one co-conspirator can not be used against another co-conspirator, if made in his absence after the commission of the crime or the termination of the conspiracy. There is no question of the soundness of appellant's proposition as a question of law or rule of evidence, but it is as equally well settled that the acts and declarations of one conspirator is admissible against another conspirator pending the conspiracy and until its final termination. As long as a conspiracy is pending or the common purpose and design is not completed, all the acts and declarations of co-conspirators are admissible. This proposition includes anything that was within the contemplation of the conspiracy, such as dividing the spoils or any of those matters that may be subsequent to but included in the scope of the conspiracy. Franks v. State, 36 Texas Crim. Rep., 149; O'Neal v. State, 14 Texas Crim. App., 582; Rix v. State, 33 Texas Crim. Rep., 353. The facts introduced in connection with the letter are sufficiently strong to show that not only was the house to be burned but obtaining of the insurance money was equally contemplated. The facts sufficiently show the conspiracy. The letter in question discloses that Jones had failed to send appellant money through the bank as agreed, but had sent it in the letter introduced in evidence. It is evident from this letter that appellant was to set fire to the Hickman Cumbie house. This house was located by the witnesses at the point mentioned in the letter, the Jones house being situate between the bank building and the Hickman Cumbie building. We are of opinion this record shows that the burning of the house was one of the steps in the agreement or conspiracy, the ultimate design of which was to obtain the six hundred dollars insurance. The conspiracy had not ended, the ultimate design had not been accomplished. Appellant's proposition is unsound that the evidence was inadmissible by reason of the ending of the conspiracy, and that the declaration or the writing was the act of one of the conspirators after the consummation of the conspiracy. The letter was written before the burning, though received by appellant afterward. It was written on the twenty-eighth, at Lampasas, and reached Bronte, Coke County, on the twenty-ninth. The house was burned on the night of the twenty-eighth. This was a communication by one of the conspirators to another in regard to the conspiracy, and in furtherance of that conspiracy, and the mere fact that appellant was not aware of the contents of the letter until subsequent to the burning would not render it inadmissible. It was not a statement by Jones to another party in the absence of appellant after the completion of the conspiracy. This was a communication directed from one of the conspirators to the other, received by that other, and in no way denied by the other, and referred to matters that seemed to be well under-

stood and agreed between them. It will be noted that appellant received the ten dollars from Jones sent him from Lampasas, which had been expected through the bank prior to the burning. So we hold, first, the conspiracy had not terminated at the time of the reception of the letter by appellant; and, second, that it was a communication from one co-conspirator to the other, and is not within the rule that the incompetent acts and declarations of co-conspirators made or done in the absence of another, are excluded. See authorities cited above; 8 Cyc., 680; 12 Cyc., 435-436-440. In each volume of Cyc., supra, in the footnotes will be found many authorities supporting the text. We are, therefore, of opinion that there was no error in the action of the court permitting the letter to go to the jury as evidence. This being the only question urged for reversal, it is not well taken, and the judgment is therefore affirmed.

*Affirmed.*

### ON REHEARING.

#### October 21, 1909.

DAVIDSON, PRESIDING JUDGE.—During the term of this court last June the judgment herein was affirmed. Appellant now moves for a rehearing, alleging that the court made an incorrect statement of the facts in regard to matters occurring when Jones took out the insurance policy on the house that was alleged to have been burned, and which was situated in another county at the little village of Bronte. Special exception seems to have been taken to that particular part of the statement in the opinion, which is as follows: "A few days prior to the burning Jones and appellant went from Bronte, where the burning occurred, to Ballinger, for the purpose of insuring the Jones house, which they did for six hundred dollars." After a careful review of the statement of facts, we are still of opinion, first, that the evidence would justify the statement; and, second, that whether it is exactly correct or not is a matter of small moment and would not change the result. The evidence in this respect is, in substance, as follows: It is conclusively shown that appellant occupied the house the night of the burning, and had done so for one or more days. The witnesses differ somewhat as to the time that appellant had been in Bronte before the burning occurred, this evidence ranging from three or four days prior to said burning up to two or three weeks. The witness Keeney testified as follows: "I suppose Mr. Gracy had been in Bronte two or three weeks prior to the fire. I had noticed the gentleman there something like that long. I don't know exactly to a day, but had noticed him around there during that time. He left the next morning, on the mail hack, for Ballinger. He made no statement with reference to insurance on the building. I didn't ask him anything about that." Some

of the other witnesses testify that appellant had been there for a week and some about three or four days before the fire. Mr. Alexander, the insurance agent at Ballinger, testified that he lived at Ballinger, and was engaged in the insurance business, and was acquainted with appellant. He further states: "The day we wrote the insurance, I. believe, is the first time I ever saw him. I saw him first the morning the policy was written. I have forgotten the date. The insurance has been taken up. The first I noticed of the burning of the Hickman Cumbie building at Bronte I noticed it in the Banner Leader. The first time I saw this defendant was in my office in Ballinger. Mr. M. R. Jones was with him. I had the conversation mostly with Mr. Jones. The defendant was present a part of the time. That conversation was about insurance. . . . Mr. Jones and Mr. Gracy came to my office and Mr. Jones said: 'This is the man that is going to put in a pool and billiard hall,' and Mr. Gracy said: 'Yes.' And it was that understanding that he go and put in the hall at once, that we accept the application for insurance. They were speaking of the building next to the First National Bank at Bronte, as stated in the policy. It joined the bank on the west side. It was a wooden building. They said that building was owned by Mr. Jones. They described it as a wooden structure." Then follows a description of the building, and he further states: "Mr. Jones took out $600 insurance on the building, as well as I remember. He took out none on the contents of the building. . . . We took the application and Mr. Gracy and Mr. Jones went down and we wrote up the policy. Mr. Jones returned later and we delivered the policy to him and he paid for it." With reference to the time of the burning after the issuance of the policy the witness said: "It was on Saturday morning after the building burned we noticed it in the Banner Leader, and my brother called up the cashier of the First National Bank and asked him if it wasn't that building. That was the cashier of the First National Bank of Bronte. I have forgotten the exact date of the policy. It was on Saturday after the issuance of the policy, I have forgotten the date of the policy. As well as I remember, it was a little less than a week—probably a few days less than a week." Mr. Walton, testifying in regard to the presence of appellant at Bronte, says: "I think some few days or a week before that he came there. I think he slept in the Jones business house down there. And he came there about a week before the fire. The Jones house joined the Hickman-Cumbie building, and on the west side of the bank." In view of the criticism of appellant's counsel, we have made the above statements from the record, some of which we have placed in quotation marks. In the opinion of the court it was not very material whether Jones and appellant went from Bronte to Ballinger to secure the insurance or went from some

other point. The question at issue was their acting together in the matter and the knowledge and co-operation of appellant with Jones in securing the policy as viewed in the light of the burning which occurred shortly afterward. As well as the time can be located from this record the burning occurred on Tuesday night. Mr. Alexander observed an account of it the following Saturday in the Banner Leader. So it was not farther remote from Saturday than a week as to the date of the issuance of the policy. We call attention to the fact, that if appellant was at Bronte even a week before the burning, which was on Tuesday night, he must have gone from Bronte to Ballinger, and if he was there, as testified by the witness Keeney, for two or three weeks, this conclusion would be strengthened, but that we say is immaterial. The fact is certain that they were there together, and appellant was aiding, to some extent at least, with full knowledge on his part that Mr. Jones was taking out the insurance for the $600. The premises on which the house was burned was estimated at the value of three to five hundred dollars. This includes the lot. The insurance on the house was $600. Appellant was to establish a pool and billiard hall in the house, but at the time of the fire had placed nothing in it except a bed and bed clothing, and on the night of the fire he managed to get all of this out of the house without the loss of any of it. The theory upon which appellant was convicted was that he was acting with Jones in order to obtain the insurance money, and these facts, taken in connection with the letter introduced in evidence, seem to place it beyond any reasonable doubt that such was the condition of the facts placed before the jury. It is unnecessary to go into any detailed statement in regard to the letter, because there was no question, if the contents of that letter was to be credited at all, it showed that the parties had been acting together to accomplish what was accomplished. Appellant, in his motion for rehearing, and also in the original presentation of the case, fails to make any claim that he was not with Jones at Ballinger at the time that Jones took out the insurance on the house situate at Bronte, and there is no claim that he was not sleeping in the house on the night the house was burned, and the facts show he made ample preparation to burn the house.

There is another question presented, to wit: Appellant contends that it was fundamental error on the part of the court not to give in charge the law in reference to accomplice testimony and necessary corroboration. As stated in the original opinion, the only question presented for revision was the alleged error on the part of the court in admitting the letter in evidence, which is discussed in the opinion. On motion for rehearing no complaint is urged on this score. In reference to the failure of the court to charge the law in reference to accomplice testimony, it may be sufficient to

state that for the first time that question is raised in the motion for rehearing. The question of fundamental error urged by appellant is not well taken under the construction placed by this court on article 723 of the Code of Criminal Procedure. In order to suggest error on the part of the court in giving charges in criminal cases, it must be excepted to either on trial or in motion for a new trial, otherwise it will not be noticed on appeal. This question has been so often reviewed and decided, we deem it unnecessary to cite authorities. We think appellant is correct in assuming and stating that Jones was an accomplice to the offense of arson. We think the record makes it so, and the prosecution was based upon the theory that appellant burned the house to aid Jones in securing the insurance money, and, of course, if it is true that Jones had consulted with appellant in reference to the matter and agreed that the house should be so burned, and appellant executed the ends and purposes of that conspiracy, this would make him an accomplice. But the charge on accomplice testimony was not authorized in the case. Jones was not a witness and did not testify on the trial. The facts showed him a party to the crime under facts proved on the trial.

Finding no reason for changing the view heretofore expressed in regard to the affirmance of this case, the motion for rehearing is overruled.

*Overruled.*

Brooks, Judge, absent.