## D. D. Spates v. The State.

### No. 1216. Decided June 7, 1911.

#### 1.—Murder—Accomplice—Charge of Court—Knowledge of Crime.

Where, upon trial of murder, the evidence showed that the defendant told the witness for the State, before the homicide occurred, "There is where I will do the work tonight," to which the witness replied, "Uh huh," and left; and it was not shown that the said witness had advised or consented to, approved or encouraged the crime. Held, that he was not an accomplice, and there was no error in the court's failure to charge on accomplice testimony as to this witness.

#### 2.—Same—Charge of Court—Accomplice Testimony.

Where, upon trial of murder, one of the State's witnesses was an admitted accomplice, and the court's charge, taken as a whole, correctly submitted this issue to the jury, there was no error. Following King v. State, 57 Texas Crim. Rep., 363.

#### 3.—Same—Evidence—Circumstances.

Upon trial of murder, there was no error in admitting testimony that the deceased was in possession of quite a lot of money just before the homicide, and that none or very little was found on his body thereafter; and to show that an iron piece of pipe was found covered with blood stains, etc., near the scene of the homicide.

#### 4.—Same—Evidence—Expert Testimony.

On trial of murder there was no error to admit testimony of a physician's post mortem examination of the deceased, to show how he came to his death.

#### 5.—Same—Circumstantial Evidence.

Upon trial of murder there was no error in admitting testimony that the defendant had no money just before the homicide, and that he had quite a lot of it immediately thereafter.

#### 6.—Same—Evidence—Flight.

Upon trial of murder there was no error in admitting testimony that the sheriff pursued the defendant and arrested him in another county, and that there were several charges of felony and misdemeanor against the defendant; the defendant not objecting to any of the testimony at the time.

#### 7.—Same—Closing Evidence—Discretion of Court.

Where no abuse of discretion is shown, there was no error in the court's action to permit additional testimony for the State after the opening speech of the prosecution had been made, and while counsel for the defendant was making his opening address.

#### 8.—Same—Sufficiency of the Evidence—Charge of Court.

Where, upon trial of murder, a conviction of murder in the first degree was sustained by the evidence, and showed the purpose of the homicide to have been robbery, there was no error in refusing to give a peremptory instruction to acquit.

Appeal from the District Court of San Augustine. Tried below before the Hon. W. B. Powell.

Appeal from a conviction of murder in the first degree; penalty, death.

After defining an accomplice, the court charged the jury as follows: "You are instructed that the witness Fred Harris is an accomplice, and you can not convict the defendant upon his testimony, however true you may believe it to be, unless the same is corroborated by other testimony in the case, aside from his testimony, which tends to connect defendant with the commission of the offense; and unless you find that his testimony in the case has been corroborated as to the defendant's killing the deceased, you will consider it for no purpose. The fact that the testimony of the witness Fred Harris may have been corroborated as to immaterial matters is not sufficient, but the corroboration must be and applied to that portion of the accomplice Harris' testimony, if any, that is material and which connects the defendant with the commission of the offense charged."

The opinion states the case.

*H. B. Short* and *Foster & Davis,* for appellant.—Upon question of admitting testimony of sheriff as to other offenses: Gaines v. Salmon, 16 Texas, 311; Smith v. State, 4 Texas Crim. App., 626; Harris v. State, 1 Texas Crim. App., 74; Briscoe v. State, 27 Texas Crim. App., 193.

Upon question of admitting illegal testimony and court's qualification of defendant's bill of exceptions: Drake v. State, 29 Texas Crim. App., 265; Hester v. State, 15 Texas Crim. App., 567; Preston v. State, 4 Texas Crim. App., 186; Haynie v. State, 2 Texas Crim. App., 168; Somerville v. State, 6 Texas Crim. App., 433; McWilliams v. State, 44 Texas, 116.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was indicted in the District Court of San Augustine County charged with murder, and on a trial he was found guilty and his punishment assessed at death.

It appears from the record that Martin Allen was night watchman at a planing mill in San Augustine, about a quarter of a mile from the courthouse. On June 4 of last year he appeared at the mill at six o'clock in the evening and was in sound health apparently. The next morning he was dead, his position showing that he died while engaged in his work. With some kind of instrument blows had been rained on his head; his skull was crushed, and the physician says death was instantaneous. He was shown to have had forty odd dollars on his person when he went to work on Saturday evening. Sunday morning he was dead with only fifteen cents in his pockets. A piece of two-inch iron pipe, weighing eight to ten pounds, was found

near the body, with blood stains and hair attached to it. He stayed alone at the mill at night, and he met death with no eye to see except that of the murderer and his accomplice, if the testimony is to be believed.

Appellant's first ground in the motion for a new trial questions the sufficiency of the evidence, and if the witness Stepney Duffield is an accomplice, as contended by appellant, the contention must be sustained, or if the evidence raises the issue, then the judgment must be reversed. Fred Harris is an admitted accomplice and he testifies that Stepney Duffield came to the home of appellant on the day of the killing, and that appellant and Duffield had a conversation in his presence, but he did not hear it. That after Duffield left, appellant and the witness Harris started to their work, and when they got to a clump of bushes near the mill appellant suggested that they wait until Duffield came and they would all get a drink. That when Duffield came he had whisky and they all drank, and appellant remarked, "There is where I will do the work tonight;" and there is where Martin Allen was murdered that night. The witness saying Duffield replied, "Uh, Huh" and left. This is all the testimony that tends to make Duffield an accomplice. Duffield denies this testimony, and shows by uncontroverted testimony that he had no part in the killing, witnesses placing him at a point that night in the country where it would have been impossible for him to have taken any part in the murder, or to have been doing any act in the furtherance of the crime. So the question is, does the fact that a witness testifies that a person is told in advance of a crime that it is going to be committed raise the issue that he is an accomplice? No other fact is elicited further than appellant talked to him that day at his home, and later was told by appellant that he was going to do the work that night. He is not shown to have advised it, consented to it, nor approved it, only saying, according to the witness, "Uh, Huh," at once leaving, and not returning to town any more until the day after the murder. In the case of Elizando v. The State, 31 Texas Crim. Rep., 237, this court holds: "The fact that she knew that a conspiracy had been entered between her husband and defendant to commit the crime, and subsequently heard defendant's confession of guilty participancy in the deed does not constitute her an accomplice."

Mr. Wharton says: "The concealment of the knowledge that a felony is to be committed will not make the party concealing it an accessory before the fact, nor will a tacit acquiescence, or words which amount to a bare permission, be sufficient to constitute the offense." Whart. on Hom., secs. 345 and 346. See also Noftsinger v. State, 7 Texas Crim. App., 301; Smith v. State, 23 Texas Crim. App., 357; Schackey v. State, 41 Texas Crim. Rep., 255, 53 S. W. Rep., 877 So we hold that the court did not err in not submitting the issue of whether or not Duffield was an accomplice. No charge was requested in this respect, and no exception taken to the failure of the

court to submit this issue to the jury, and it is raised for the first time in the motion for a new trial, but as the death penalty was assessed, and the sufficiency of the corroboration of the accomplice Harris depends on whether or not Duffield was also an accomplice, we have carefully read, and reread the evidence, and we do not find evidence that would raise this issue under the decisions of this court, and, taking this view of it, the evidence is abundant to corroborate the accomplice and establish the guilt of defendant, for Duffield testifies to a confession of defendant that he was the person who killed Martin Allen in the dead hours of night, and the language used would indicate that he felt proud of his ability to commit such a heinous crime. Gray v. State, 57 Texas Crim. Rep., 68.

Complaint is made of the charge of the court on accomplice testimony. When that paragraph of the court's charge is taken as a whole it is not subject to the criticism contained in the motion, and the charge is in accordance with the holdings of this court in King v. State, 57 Texas Crim. Rep., 363, and cases cited.

The other grounds relate to the admissibility of evidence. There was no error in the court permitting the witness Price to testify that deceased was in possession of two twenty dollar bills and other currency the evening before the killing when he came to go to work, and that it was exhibited to the witness; nor that deceased had no money on him next morning except fifteen cents. The accomplice Harris testifies that robbery was the sole motive of the murder. Neither was there any error in permitting the witness to testify: "We looked around to see if I could find any signs of a scuffle, and to find if possible if they left the weapons or weapon used that he was hit with. I was sure he had been killed. The bruises showed that and I found a piece of pipe; it was a two-inch pipe, iron pipe; it was something like two feet long, maybe twenty-eight inches long; it was an iron pipe; it was what is commonly known as a two-inch pipe; I would know that piece of pipe if I were to see it; that is the piece of pipe right there; there was small bloodstains and negro hair on it; Martin Allen was a negro with very kinky hair; I found the piece of pipe six or eight feet from the body; it had evidently been used pretty hard, as it was dinted a little bit, not bent, but flattened a little; I suppose that piece of pipe would weigh about eight pounds, maybe ten; I would not be certain about that as I am not an expert on guessing weight."

Neither was there error in the court permitting the witness Dr. Smith to testify: "I was acquainted with Martin Allen, the deceased; I saw him about the 4th or 6th of June, 1910. I saw him down at the Price Lumber Company planer. The first time I saw him he was lying down right by the side of the machine. I examined him and found some wounds on him. I don't know as I could describe them exactly; I made a postmorten report and I have not been able to find it. It was tolerable early in the morning, about 7 or 8 o'clock. It

was on a Sunday morning and he was killed on a Saturday night. He had been hit with some heavy instrument, one lick right behind the left ear; I think that fractured his skull, and he was hit right in the center of the back of the head; I don't think that fractured his skull any, and he was hit kind of up towards the top of his head, a little to the right of the top of his head, and he hit him one lick right over his eye, and made a wound down to the bone about two and one-half or two inches long, but that did not fracture his skull. I think there were four wounds in all. That is the way I remember it now; the wounds were made with some kind of heavy, blunt instrument, and the instrument you show me (the one testified by Price) would have been sufficient to produce the wounds."

The blood and hair on the pipe, together with the character of the wounds, indicate clearly that it was the instrument used in perpetrating the crime, and the witness Duffield says that appellant admitted to him that he killed the deceased.

Appellant complains that I. L. Miller was permitted to testify that defendant was in his store that night explaining why he could not pay an account that night, and offering to give a mortgage to secure additional credit, and that he was not as usual and appeared to be drinking; and also complains that the witness Ed Smith was permitted to testify that appellant came to his store that night and purchased a quantity of goods, among which was a pair of No. 7 shoes, and paid him between $7 and $8 in money. The accomplice Harris had testified that after deceased was killed appellant had bought and given him a pair of No. 7 shoes; that appellant had been drinking, and we think it admissible also to show that at one time that night he claimed to have no money, and at another time the same night he went into another store and was supplied with money, especially in the light of the testimony of Fred Harris, the accomplice, who testified to defendant's going into these places; that the murder was committed to obtain money, and after obtaining it from the dead man, the bringing home of those articles purchased at Mr. Smith's. To take the testimony of these witnesses and isolate it, and consider each by itself, it might seem to be immaterial and irrelevant, but when we take the record as a whole, the relevancy is apparent.

Sheriff Cuptt testified: "I know of the incident of Martin Allen being killed. I saw Spates often after that every day for a good, long time. He did not remain here all of the time up to the time he was arrested. After he left the country I first saw him at McGregor, Texas; I can not say just how far that is from here, about 400 miles; Spates is a man with a family; at the time I found out where Spates was his wife was living with his sister out here on the Davis farm here in the county of San Augustine, about four miles west of town; I went out to McGregor, Texas, after Spates; we had a misdemeanor charge against him, and he had a charge of assault with intent to murder in another case was the principal thing, and I had

some other reasons." When defendant's counsel stated "We object to proving anything further," which objection was by the court sustained, and the witness was not permitted to state any other reasons. If appellant objected to any testimony already elicited from this witness, he should have objected to it being admitted at the time it was offered.

In another bill appellant complains that after the testimony had been closed, and the prosecution had made its opening speech, and while counsel for appellant was making the opening address, the court permitted the State to offer additional testimony. This is a matter lodged in the sound discretion of the court, and this court would not disturb a verdict on such ground, unless gross abuse of the discretion was shown. In Nutt v. State, 19 Texas, 341, it is held that it is the duty of the court to admit additional testimony at any time before the argument has closed, if it appears that it is necessary to the due administration of justice. This is statutory. See article 698, Code of Criminal Procedure, and authorities collated thereunder in White's Ann. Code Crim. Proc.

The only other assignment of error is the failure of the court to give a peremptory instruction requested by appellant. Taking the testimony of the accomplice as to the mode and manner of the crime, that it was for the purpose of committing robbery, and the old negro had done nothing to forfeit his life, and the corroboration of his testimony by the witness Duffield and the other facts and circumstances in evidence, we can not say that the testimony is insufficient or that the punishment assessed is not merited.

The judgment is affirmed.

*Affirmed.*