WILLIAM HARGROVE v. THE STATE.

No. 1038.   Decided June 21, 1911.

**1,—Murder—Witness—Accomplice—Accessory.**

Where, upon trial of murder, the record showed on appeal that one of the principal State witnesses denied any knowledge of the transaction when first interrogated about it, but upon trial testified to material facts for the prosecution, stating that he had lied about the matter because he was afraid that the defendant would kill him. Held, that the mere fact that the witness denied any knowledge of the matter when first interrogated would not constitute him an accessory or an accomplice. Following Chenault v. State, 46 Texas Crim. Rep., 351.

**2.—Same—Charge of Court—Accomplice.**

Where, upon trial of murder, the court in his charge submitted the question as to whether a certain State's witness was an accomplice, when in fact he was not an accomplice, the defendant could not complain.

**3.—Same—Charge of Court—Circumstantial Evidence.**

Where the court submitted a proper charge on circumstantial evidence, it was not necessary to inform the jury that the State relied wholly upon circumstantial evidence; besides, this was not the case.

**4.—Same—Sufficiency of the Evidence.**

Where, upon trial of murder, the evidence sustained the conviction, the verdict assessing the death penalty, there was no reversible error.

Appeal from the District Court of Walker. Tried below before the Hon. S. W. Dean.

Appeal from a conviction of murder in the first degree; penalty, death.

The opinion states the case.

*Dean, Humphrey & Powell,* for appellant.—On question of accomplice: Blakely v. State, 24 Texas Crim. App., 616; Davis v. State, 2 Texas Crim. App., 588; Freeman v. State, 11 Texas Crim. App., 92; Gatlin v. State, 40 Texas Crim. Rep., 116, 49 S. W. Rep., 87; Caylor

v. State, 44 Texas Crim. App., 118; Smith v. State, 51 Texas Crim. Rep., 137; Schackey v. State, 41 Texas Crim. Rep., 255.

C. E. Lane, Assistant Attorney-General, and Hill & Elkins, for the State.—On question of accomplice: Elizando v. State, 31 Texas Crim. Rep., 237; Sharp v. State, 29 Texas Crim. App., 211; O'Coner v. State, 28 Texas Crim. App., 288; Smith v. State, id., 309; Rhodes v. State, 11 Texas Crim. App., 563.

HARPER, JUDGE.—Appellant was indicted by the grand jury of Walker County, charged with the murder of J. J. Hardy, and upon a trial he was convicted and his punishment assessed at death. This is a companion case of John Cain v. The State, decided at a former day of this term, and in that case the death penalty was also assessed by the jury.

In this case John Cain testified that appellant came by his mother's house on Friday evening (the murder occurred that night) and they had a conversation about some shells, and appellant made an appointment to come back later. That appellant came back that night and Cain let him have the shells, and also got a single-barrel shotgun and let appellant have it. They then went together to Mr. Hardy's house, and by command of appellant he called Mr. Hardy, and when Mr. Hardy came to the door appellant told Mr. Hardy he was wanted at the telephone office, representing himself as Anthony Harris. Upon Mr. Hardy coming out of the house, Cain testifies, appellant shot and killed him.

After Mr. Hardy was killed Arthur Williams, a son-in-law of appellant, was, with others, arrested and placed in jail in connection with this killing. While in jail Williams was carried before Mr. Elkins, one of the prosecuting attorneys, and denied that appellant had anything to do with the killing of Mr. Hardy; that he, witness, was at his father-in-law's (appellant's) house, and appellant went to bed after supper, and that if he left the house that night he did not know it. On the trial of this case he says: "I told Mr. Elkins that lie because Will (appellant) told us if we told it (about the killing of Mr. Hardy) he would kill us." On the trial of the case this witness testified among other things: "I remember the time that Mr. Hardy was killed. At that time I was staying at Will Hargrove's house. I was living there at the time. I saw John Cain that evening. Will Hargrove and James Sanders were with me. John Cain was in the yard cutting wood when we passed there—when we passed his father's house. He was there cutting wood when we were passing there in the wagon. We stopped there, and Will got out of the wagon, and him and Joe and John Cain went on in the house. They stayed in the house about ten minutes, I guess, and came out. Will came out, and me and James had gone on, and he come on and got in the wagon. Me and James had gone on down the road. That was the same eve-

ning of the killing. I did not see John any more that night. I saw
Will again at home. He said what he was going to do. He told his
wife that him, and John Cain were going to kill Mr. Hardy, and his
wife said if she was him she wouldn't do that, and he said 'Plague
take that,' and went on. That was in the early part of the night; I
don't know what time it was. Will said, 'Plague take that,' and went
on. That was long about the first part of the night; I don't know
what time it was. It was dark; it was just about after supper. Will
went on out, and I didn't see him no more until next morning. I
don't know what time he came back that night. I heard him say next
morning that him and John Cain had killed Mr. Hardy. He was
talking to his wife when he said that."

Appellant in an able brief contends that this makes Williams, as
well as Cain, an accomplice or accessory after the fact. That the fact
that he denied to Mr. Elkins soon after the killing any knowledge of
the matter, and stated that appellant was at home (if appellant is
guilty), is such conduct as would render him an accessory, and cites
us to the case of Blakely v. The State, 24 Texas Crim. App., 616.
This case is not applicable to the facts in this case. See Caylor v.
The State, 44 Texas Crim. Rep., 124; Smith v. State, 51 Texas Crim.
Rep., 141, and the case of Chenault v. The State, 46 Texas Crim.
Rep., 351, 81 S. W., 972, in which the rule is laid as follows:

"Article 86, Penal Code 1895, provides: 'An accessory is one who,
knowing that an offense has been committed, conceals the offender or
gives him any other aid in order that he may evade an arrest or trial,
or the executions of his sentence.' The proffered evidence, as disclosed
by the two bills above, is insisted by appellant as being pertinent evi-
dence in this case, upon the theory that the same would prove that the
witnesses were accessories to the forgery. We hold that said testimony
is not admissible for this purpose. No one in this State can be an
accessory after the fact, such as disqualifies him as a witness, unless
he comes within the letter and spirit of the article above quoted; that
is, he must give some aid and assistance to the principal before he can
be guilty; in other words, he must conceal the offender or give him
some other aid, in order that he may evade an arrest or trial. The
aid here contemplated is such as furnishing him with a horse to flee
upon, or giving him a gun with the view of resisting arrest for the
offense, or some other overt active assistance. The evidence going to
disqualify a witness must be of sufficient force to convict him as ac-
cessory to the crime before such witness would be an accesory. In
Schackey v. State, 41 Texas Crim. Rep., 255, 53 S. W. Rep., 877,
quoting from Mr. Bishop, we said: 'That the test of an accessory
after the fact is that he renders his principal some personal help to
elude punishment—the kind of help being unimportant. Keeping a
witness, by persuasion or intimidation, from appearing against a felon
on his trial, does not render one the felon's accessory, though it is

punishable as a misdemeanor.' And further, 'That we learn from the elucidations of the first volume (of the same author) that an accessory after the fact in felony is one who in any way aids the principal offender, whom he knows to be guilty of the felony, to elude punishment.' 'One is not an accessory who merely neglects to make known to the officers that a felony has been committed, or who forbears to arrest the felon or agrees not to prosecute him. Keeping a witness by persuasion or intimidation from appearing against a felon on his trial does not render one the felon's accessory.' Bishop Cr. Law, vol. 1, sec. 694. Nor does the fact that one agrees for money not to give evidence against a felon, or knows of the felony, and does not disclose it, make the party an accessory after the fact. There must be some independent criminality to make an accessory. By independent criminality, as here stated, we understand is meant such aid as suggested above; such as furnishing a horse, a weapon or disguise, to enable the party to escape after the commission of the crime." This definition has been adhered to in all the later cases by this court, and the mere fact that the witness denied any knowledge of the matter when first interrogated by Mr. Elkins would not constitute him an accessory under the facts of this case.

We hold that the facts do not constitute the witness an accessory, and there was no error in the court refusing to give the special charges requested finding as a fact this witness to be an accomplice. The court's charge, in submitting whether or not the witness Williams was an accomplice, is more favorable to appellant than the facts called for in this case—especially so in view of the special charge given at appellant's request. Neither did the court err in his paragraph on circumstantial evidence. It is worded in the customary and usual form, and it was not necessary for the court to inform the jury that the State relied wholly on circumstantial evidence to corroborate the witness Cain. If in law the witness Williams was not an accomplice, he testified to an admission of defendant that he aided in the killing, and if it had not been for the fact that the court submitted whether or not said witness was an accomplice to the jury it would not have been necessary to charge on circumstantial evidence. Clore v. State, 26 Texas Crim. App., 624; Surrell v. State, 29 Texas Crim. App., 321.

This disposes of all the grounds of the motion for a new trial except the fifth, which complains of the insufficiency of the evidence and presents the serious question in the case. Had we held under the facts the witness Williams was an accessory or accomplice, we would be inclined to agree with appellant that the corroboration of the accomplice was not sufficient, but inasmuch as we hold that he is not an accessory, his testimony wherein he says that he heard appellant say that he and Cain were going to kill deceased, heard him admit that they had killed him, taken together with the motive shown, and the other facts in evidence, we have concluded that the evidence sustains the verdict. The evidence shows that deceased had accused appellant

of stealing cotton from him—that cotton claimed by deceased was found in appellant's house. A prosecution was then pending against appellant for this offense. On Thursday, before the murder on Friday night, appellant's fence was burned, and for this he blamed deceased. The morning after the killing, when discussing the death of deceased, he said, "God heard my prayer, you see that." This amply showed motive. Cain testifies postively appellant killed deceased; he is corroborated by Williams in testifying to appellant's confession. Mrs. Hardy corroborates him in the statement that the person who killed her husband represented himself to be Anthony Harris; and taking the other facts and circumstances in evidence in consideration, we do not feel inclined to disturb the verdict of the jury. The record is free from error, and while we must compliment the attorneys who represent appellant by appointment of the court, without fee or hope of reward, for the able manner in which they have represented his defense, even to appearing in this court at their own expense, and the filing of a strong brief, we are constrained to believe that the judgment must be affirmed.

*Affirmed.*