## Uriah Foster v. The State.

### No. 1776.   Decided October 30, 1912.

#### Rehearing denied November 20, 1912.

**1.—Murder—Accomplice—Charge of Court.**

Where, upon trial of murder, it was a disputed fact whether a certain State's witness was an accomplice, and there was no corroborating testimony, it was proper for the court to submit this question to the jury in a proper charge, and the jury finding that said witness was not. an accomplice, the conviction was sustained upon his testimony.

**2.—Same—Accessory—Corroboration—Charge of Court.**

Where, upon trial of murder, the testimony showed that the principal State's witness agreed not to report the killing and that he did not tell it until he was arrested, charged with a different offense, this did not make him, in law, an accessory, and the court submitting the question of accomplice and accessory to the jury, the conviction was sustained without the corroboration of the alleged accomplice testimony, the jury finding adversely to the defendant's contention that the witness was an accomplice or accessory. Following Chenault v. State, 46 Texas Crim. Rep., 351.

**3.—Same—Requested Charge—Accessory.**

Where, upon trial of murder, the defendant claimed that the principal State witness was an accomplice or an accessory and this was disputed by the State's testimony, the court correctly submitted this question to the jury and correctly refused a charge that if said witness failed to report the fact of the killing to the constituted authorities, he would be an accessory.

**4.—Same—Charge of Court—Requested Charges.**

Where some of the requested charges were covered by the court's main charge and some of them did not present the law of the case, there was no error in refusing them.

**5.—Same—Evidence—Moral Turpitude.**

Where, upon trial of murder, the State admitted that the reputation of the principal State witness for truth and veracity was bad, and the defendant was permitted to show that said witness had been convicted of a felony and sent to the penitentiary, there was no error in not admitting further testimony that said witness had been convicted of an offense some fifteen years prior to defendant's trial.

**6.—Same—Evidence—Civil Suit—Motive.**

Upon trial of murder, there was no error to exclude testimony that the county attorney had brought suit against a railroad company for damages growing out of the death of the deceased, the testimony of the State developing that deceased had been killed and placed on a railroad track to be mutilated by the train running over same and thus to cover up the crime; the State showing that the motive of the defendant was to kill the deceased to keep him from testifying against him.

**7.—Same—Evidence—Motive—Declarations of Defendant.**

Where, upon trial of murder, the State's testimony tended to show that defendant had killed deceased to keep him from testifying against him in a gambling case, there was no error to admit testimony that defendant had approached other parties who were indicted with him for gaming and requested them not to plead guilty, as they could beat the case.

**8.—Same—Evidence—Opinion of Witness.**

Upon trial of murder, there was no error in excluding the deduction or opinion of defendant's witness as to whether deceased had fallen on the railroad track between the trucks.

**9.—Same—Evidence—Identity of Deceased.**

Where, upon trial of murder, the defendant contested the issue that the body found on the railroad track was that of the person alleged to have been killed, there was no error in permitting the State to prove the height of deceased and the measurement of those portions of the mangled body found on said tracks.

**10.—Same—Evidence—Impeaching Witness—Prior Statements.**

Where, upon trial of murder, the defendant attempted to impeach the principal State's witness by showing his reputation for truth and veracity was bad, and by contradictory statements, there was no error in permitting the State to prove prior statements of said witness in conformity with his testimony on the trial.

**11.—Same—Evidence—General Reputation—Prior Offenses.**

Where the reputation of the State's witness for truth and veracity was admitted by the State to be bad, there was no error in excluding testimony as to prior offenses committed by defendant.

**12.—Same—Evidence—Interested Witness.**

Upon trial of murder, there was no error in admitting testimony showing the interest and friendly feeling of defendant's witness toward him.

**13.—Same—Sufficiency of the Evidence—Accomplice Accessory—Principals.**

Where, upon trial of murder, it was a disputed fact whether the principal State's witness was an accomplice or an accessory and this question was properly submitted to the jury who determined this against the contention of the defendant, there was no error in the court's failure to charge on principals, and there being no evidence which called for a charge on murder in the second degree or manslaughter, the conviction for murder in the first degree was sustained by the evidence.

Appeal from the District Court of Bastrop. Tried below before the Hon. Ed. R. Sinks.

Appeal from a conviction of murder in the first degree; penalty, imprisonment for life in the penitentiary.

The opinion states the case.

*J. B. Price* and *John T. Duncan,* for appellant.—On question of accomplice: Blakely v. State, 24 Texas Crim. App., 616; Dodson v. State, 24 id., 514; Mercer v. State, 17 id., 452; Freeman v. State, 11 id., 92; Davis v. State, 2 id., 588.

On question of corroboration: Phillips v. State, 17 Texas Crim. App., 169.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was indicted and convicted of murder in the first degree and his punishment assessed at imprisonment for life.

Appellant has assigned many errors, but the one chiefly relied on apparently is that the court erred in not instructing the jury as a matter of law that Bill Mitchell was an accomplice, or accessory. It may be conceded that if the evidence, as a matter of law, made Mitchell either an accomplice or an accessory, then his testimony is not cor-

roborated in material matters. If he is not an accomplice or an accessory, then his testimony, and the testimony of the witness Johnson, sufficiently established the corpus delicti and all the facts essential to sustain a conviction.

The State's evidence is that Mitchell met appellant and Johnson, and all three agreed to go to a point near town where gambling was going on that night. That when they arrived at this point they found deceased there, engaged in gambling. That after all had participated in the gaming for some time, appellant, Johnson, Mitchell and deceased all started to town. It appears that deceased was a witness against appellant and Johnson in gaming cases pending in the County Court, which would come up on the next Monday; that on the way to town appellant asked deceased if he was going to court, and upon deceased replying that he was going to do so, appellant pulled a pistol, shot and killed deceased; that subsequent thereto witnesses Mitchell and Johnson agreed not to tell about the killing, and did not do so until a long time thereafter, in fact until after witness Mitchell was arrested for a different offense, and until Johnson was arrested charged with this offense. It appears that deceased was shot, if shot, with a pistol belonging to witness Mitchell; he testified he had pawned it to appellant a week before for $6.

The defendant's testimony is, that if appellant is the person who killed the deceased, after the gambling took place and the four had started to town, and the conversation took place about going to court, the witness Mitchell pulled his pistol and handed it to appellant, when appellant shot and killed deceased. If, as a fact, the witness Mitchell pulled his pistol at this time and handed it to appellant, this would be such conduct as would render him either a principal or accomplice, and in either event it would be necessary to corroborate his testimony. But the State's testimony disputes this fact, therefore the court was not authorized to instruct the jury that in law Mitchell was an accomplice, but it was proper to submit this disputed question to the jury for their determination, and this the court did in a proper charge. Again, appellant insists that if the witness was not an accomplice, in law he was an accessory, consequently his testimony must be corroborated. The undisputed testimony shows that the witness agreed not to report the killing, and the further fact that he did not tell it until he was arrested charged with a different offense in Fort Bend County. Does the fact that he agreed not to tell about the killing and keeping quiet for a great length of time, constitute him an accessory? This is a question that has been frequently before this court, and has been decided adversely to appellant's contention. In Schackey v. State, 41 Texas Crim. Rep., 255, these questions are discussed at length and ably, and the decisions of this court and the Supreme Court cited extensively. The only case inclining to a contrary view was the case of Gatlin v. State, 40 Texas Crim. Rep., 116, but this case was overruled in the case of Chenault v. State, 46 Texas Crim. Rep., 351,

and the rule announced in the Schackey case reannounced, and has been consistently followed since that time. (Hargrove v. State, 63 Texas Crim. Rep., 143, 140 S. W. Rep., 234; Pinckard v. State, 62 Texas Crim. Rep., 602, 138 S. W. Rep., 601; Spates v. State, 62 Texas Crim. Rep., 532, 138 S. W. Rep., 393, and authorities cited in these decisions.) We hold that the court did not err in not peremptorily instructing the jury that the witness Mitchell was an accomplice or an accessory, and did not err in submitting that question to the jury for their determination. This disposes of many questions raised by appellant, but we will take up and decide each question raised in the motion for a new trial or by bill of exceptions.

In the first bill of exceptions it is complained that the court erred in refusing to give that portion of defendant's charge No. 3 which instructed the jury, that if they believed that the witness Bill Mitchell "refused and failed to report the fact of the killing to the constituted authorities" this would constitute him an accessory. This is not the law. (Chenault v. State, 46 Texas Crim. Rep., 351.)

That portion of charge No. 3 requested by appellant in bill No. 2 is fully covered by the court in his main charge, as is also the matter complained of in bill No. 3. In fact charge No. 3 requested by appellant, as a whole presents a number of propositions which are not the law of this case, and such as were fully covered by the court in his main charge.

In bill No. 4 it is complained that the court erred in refusing to permit the defendant to prove that the witness Mitchell had been convicted of an offense some fifteen years prior to this trial. There might be merit in this contention under the evidence in this case, if the record did not disclose that "it was admitted by the State that the reputation of Bill Mitchell for truth and veracity was bad." The defendant was permitted to show that the witness had been to the penitentiary, and the State admitting his reputation for truth and veracity was bad, the exclusion of the testimony was not error, for it would only be admissible as affecting his credit as a witness.

There was no error in refusing to permit the defendant to prove that the county attorney had brought suit against the railroad company for damages growing out of the death of deceased. It may be that such suit was brought, but if later developments proved that deceased had been killed and placed on the railroad track to be mutilated by the train and thus cover up the crime, the fact that the railroad company had been mulcted for damages would not tend to prove any issue in the case. If the testimony had tended to show that any witness had testified falsely in the case, the rule would be different. As a motive for the crime the State had proven that defendant had been indicted for gambling, and deceased was the sole witness against him in that case, and that he had endeavored to keep the deceased from attending court as a witness, and had made threats that he would kill him if he did attend court. The witnesses Mitchell and Johnson had

testified that appellant had killed deceased because he would not agree not to go to court, and that deceased had stated at the time and just before he was killed that at the request and instance of appellant he had failed to attend court for two terms, but now he was under bond and was going. Over objection of defendant the State was permitted to prove, by the county attorney, that deceased had refused to obey process twice, and had been placed under bond. This was corroborative of the testimony of the witnesses whom the appellant was seeking to make accomplices or accessories and impeach, and there was no error in admitting the testimony.

Neither was there any error in permitting the witnesses to testify, who were also indicted for gambling at the same time at which appellant was charged with gaming, that appellant approached them and requested them not to plead guilty, as "we can beat the case." The record discloses that appellant had paid deceased not to attend court when the case was called, and deceased had absented himself, but when put under bond deceased had informed appellant he was going to attend, and appellant had said he would kill him if he did not get out of the way. This testimony all tended to show the motive of appellant if he committed the offense.

The appellant asked several questions which called for the opinion of the witness Judge Charles Gillespie, among them being: "Did it appear to you that some one had been riding on the train, and had fallen on the track in between the trucks?" This would be but an opinion and deduction of the witness, as would the other questions propounded to this witness, as shown by the bills of exception, and there was no error in excluding the answers. Appellant's counsel, after the facts had been stated, could present the probable deductions from the testimony, in their argument, and the jury was as capable of drawing them from such facts as was the witness.

The appellant contested the issue that the body found on the railroad track was the body of the person alleged to have been killed by defendant, and as corroborative of the testimony of the witnesses Mitchell and Johnson, that it was the body of the person alleged to have been killed; the State was permitted to prove the height of deceased, and the measurements of those portions of the body unmangled by the train. This was permissible, and there was no error in the court permitting this testimony to be introduced.

There was no error in permitting the State to support the testimony of the witness Mitchell by proving prior statements in conformity with this testimony on this trial, when an effort was made by defendant to impeach him by showing that his reputation for truth and veracity was bad, and by showing contradictory statements to the sheriff of Fort Bend County.

The appellant proved by the sheriff of Bastrop County that he had seen the pardon granted by the Governor of this State to the witness Mitchell, and then the question was asked: "How many offenses did

it cover?" An objection to this was sustained, to which appellant reserved a bill of exceptions. As hereinbefore stated, the reputation of the witness for truth and veracity was admitted to be bad, consequently this presents no error.

The testimony of the sheriff and others showing the interest and friendly feeling of Will Joiner to defendant was admissible as bearing on their credit as witnesses. This question has been so often before this court we do not deem it necessary to discuss it. (See Earles v. State, 64 Texas Crim. Rep., 537, 142 S. W. Rep., 1181.)

These are all the bills of exception in the record, and the first ground in the motion for new trial alleges the insufficiency of the testimony, on the ground that both Bill Mitchell and Ben Johnson were accomplices. If the testimony, as a matter of law, showed this to be true, appellant's contention would be sustained. But as hereinbefore stated, the question of whether or not Bill Mitchell was an accomplice was an issue of fact to be submitted to the jury, and as they found against this contention, the evidence amply supports the verdict, and there was no error in refusing the special charge instructing the jury that in law they were both accomplices. Neither was there error in refusing special charge No. 2 requested by appellant, for it is not the law of this State, that if one denies knowledge of a crime, this fact alone will constitute him an accomplice. The court instructed the jury:

"An accomplice is one who is connected with the crime, either before, at the time, or after the commission of the offense. You are instructed that the witness Ben Johnson is an accomplice. Now, if you believe from the evidence that the witness, Bill Mitchell, was connected with the crime, if any, either before, at the time, or after the commission of the offense, if any, then you are are instructed that he is an accomplice.

"You are further instructed that one accomplice can not corroborate another. accomplice.

"Now, if you believe from the evidence that the said witness, Bill Mitchell, is an accomplice, as that term is above defined, then you are instructed that there is no testimony corroborating his testimony, or the testimony of the witness Ben Johnson, and if you so find, you are instructed to return a verdict of 'not guilty.'"

After giving this charge, it was not necessary for the court to instruct the jury who are principals in the commission of an offense, under the evidence in this case.

There was nothing in the evidence calling for a charge on murder in the second degree or manslaughter, and the court did not err in submitting alone murder in the first degree. The State's evidence showed an unprovoked killing to prevent deceased from appearing as a witness against appellant in the County Court. The defendant's evidence would present an alibi, and proof that he did not commit the offense. There is nothing to suggest sudden passion from an

adequate cause, or implied malice, but the testimony, if appellant committed the offense, would show express malice.

After a careful review of the record in this case we have arrived at the conclusion that no such error is presented as would call for a reversal of the case. Appellant, by his testimony, would raise the issues that deceased was killed by the train and not by him; that if murdered he did not commit the offense. Only legitimate testimony, and all legitimate testimony, offered was admitted, the court fairly and fully submitted all the issues raised by the testimony, and while the testimony offered in his behalf would have sustained a different verdict, yet the jury in this State is made the judge of the credibility of the witnesses and the weight to be given to the testimony, and where the testimony is conflicting we are not authorized to disturb their verdict. The testimony offered in behalf of the State, if true, shows a reckless and deliberate taking of human life, and this testimony was believed by the jury who tried the case, and the testimony offered in behalf of defendant was not accepted by them. In cases of this character we can not, if we desired, substitute our judgment for that of the jury, and as the evidence of the State will support the verdict, the judgment is affirmed.

*Affirmed.*

[Rehearing denied November 20, 1912.—Reporter.]